WILLIAM GLASSMAN, Respondent, v. LIZZIE CONDON, Appellant.

No. 1522.   (76 Pac. 343.)

1. **Vendor and Purchaser: Obligations of Vendor: Marketable Title.**

A vendor, before he can compel payment of the price or any part thereof under a contract of purchase obligating him to furnish good title or warranty deed, must make a tender of title free from incumbrances, unless the contract by its terms or the circumstances leading up to the transaction shows that the parties intended that the sale should be made subject to the defects in the title.

2. **Same: Contract: Construction.**

Revised Statutes 1898, section 1981, provides that a warranty deed shall have the effect of a conveyance in fee simple with covenants that the premises are free from incumbrances. A contract recited that the vendee assumed $250 of a mortgage of $1,000 existing on the land, and that the vendor would make to the vendee a warranty deed on the payment of a certain sum, "subject to a mortgage of $250, which the party of the second part assumes and agrees to pay." *Held*, that the vendor was bound to furnish a warranty deed to the property subject to a mortgage of $250 only, and not to a mortgage of $1,000.[1]

(Decided April 14, 1904.)

Appeal from the Second District Court, Weber County. —*Hon. H. H. Rolapp,* Judge.

Action in the nature of specific performance. From a judgment in favor of the plaintiff, the defendant appealed.

---

[1] Leonard v. Woodruff, 23 Utah 494, 65 Pac. 199, distinguished.

Glassman v. Condon.

REVERSED.

*James N. Kimball, Esq.,* and *Thomas Maloney, Esq.,* for appellant.

*John E. Bagley, Esq.* for respondent.

STATEMENT OF FACTS.

The facts and circumstances out of which this action arose are as follows: On the 22d day of August, 1902, plaintiff was, and for several years prior thereto had been, the owner of a certain piece of real estate four rods in width by 134 feet in length, situate in Ogden City, Utah. On the date mentioned plaintiff entered into a written contract with defendant, whereby he agreed to sell to defendant a portion of the ground referred to. The agreement, so far, as material here, is as follows:

"Witnesseth: That in consideration of the stipulations herein contained and the payments to be made as herein specified, the first party (William Glassman) agrees to sell to the second party (Lizzie Condon) the following described premises situate in the City of Ogden, Utah, to-wit: [then follows the description of a piece of land one rod in width and 134 feet in length] for the sum of six hundred and twenty-five ($625.00) dollars, on which said sum the said party of the second part has paid the sum of one hundred ($100.00) dollars, being a part of the purchase money.

"And the said party of the second part in consideration of the premises hereby agrees to pay to the said party of the first part the following sums, to-wit: Two hundred and seventy-five ($275.00) dollars on the first day of October, 1902, leaving a balance of two hundred and fifty ($250.00) dollars, for which the party of the second part assumes and agrees to pay two hundred and fifty ($250.00) dollars of a mortgage of one thousand

($1,000.00) dollars now existing and covering on the above described land with other lands.

"The party of the first part agrees to make to the party of the second part a warranty deed upon the payment of two hundred and seventy-five ($275.00) dollars on October 1, 1902, subject to a mortgage of two hundred and fifty ($250.00) dollars, which the party of the second part assumes and agrees to pay.

"The party of the first part shall hold possession of the above described premises until January 1, 1903, at which time full possession shall be given to the party of the second part.

"The party of the first part shall pay all taxes and assessments up to and including the year 1902."

Then follows a stipulation that, in case default be made by the second party (defendant), "the party of the first part shall have the right to declare the contract null and void, and all rights and interest hereby created or then existing in favor of said second party, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted for shall revert to and revest in said first party." It is also provided that "the times of payment is the essence of this contract." Signed, "William Glassman. Lizzie Condon."

On October 2, 1902, plaintiff tendered defendant a warranty deed, signed and acknowledged in due form, and demanded payment of the $275 due under the terms of the agreement. Defendant declined to accept the deed, and refused to make any further payments on the purchase price of the land on the ground that the $1,000 mortgage mentioned in the contract remained unpaid, and was a subsisting, unsatisfied lien on the rod of ground which defendant had contracted to purchase and pay for as provided in the foregoing agreement. It is admitted that at the time plaintiff commenced this action and at the time of trial the mortgage of $1,000 mentioned in the agreement remained unsatisfied, and

27 Utah 30

was a lien upon the land in question, whereupon this suit was instituted to recover the said sum of $275. The issues were tried by a jury, who returned a verdict in favor of plaintiff. When plaintiff rested his case, defendant requested the court to direct a verdict in her favor "no cause of action," which was refused. The request was again made after both sides had rested their case, and was again refused. Defendant appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant contends that by the terms of the contract respondent was bound to furnish her with a good title, free from all incumbrances, with the exception of $250 of the $1,000 mortgage mentioned in the contract, and, having failed to do so, he is precluded from recovering in this action. On the other hand, respondent insists that, as appellant knew of the existence of the mortgage at the time the contract was signed, she is presumed to have contracted for and intended to purchase the property subject to the entire mortgage. It is an elementary principle of law that every purchaser of real property has a right to demand a title free from incumbrances and defects. And the great weight of authority holds that the legal effect of contracts to furnish a good title or a warranty deed, under a contract of purchase, is that the vendor, before he can compel payment of the purchase price, or any part thereof, must make and tender a title free from incumbrances and unclouded; in other words, he must produce and tender a marketable title, unless the contract by its terms, or the circumstances leading up to and surrounding the transaction, show the parties intended that the sale and transfer of the property should be made subject to the defects, if any, in the title. Mr. Warvelle, in his work on Vendors, sec. 46, vol. 1, states the rule to be that: "Unless there has been some stipulation as to the character of the title to the estate to be conveyed, a marketable title is always presumed, and

unless this fact can be satisfactorily established by the vendor the vendee will not be compelled to complete the purchase or pay for the land.'' And again he says on page 373: ''A purchaser in every sale, unless he specially stipulates to the contrary, has a right to expect that he will acquire a valid and unassailable title, and the law presumes that he purchases with that object in view.'' In the case of Swayne v. Lyon, 67 Pa. 436, Mr. Justice Sharswood, speaking for the court, said: ''It has been well and wisely settled that under a contract for the sale of real estate the vendee has the right not merely to have conveyed to him a good, but an indubitable, title. Only such a title is deemed marketable; for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable where it exposes the party holding it to litigation.'' This same general doctrine is upheld and declared in the following decisions: Burwell v. Jackson, 9 N. Y. 535; Smith v. Schiele (Cal.), 28 Pac. 859; Kimball v. Bell (Kan.), 28 Pac. 1016; Durham v. Hadley (Kan.), 27 Pac. 105; Moody v. Railway Company (Wash.), 32 Pac. 751; Swan v. Drury, 22 Pick. (Mass.) 485; Sanford v. Wheelan (Or.), 7 Pac. 324; Hinckley v. Smith, 51 N. Y. 21; Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Shreck v. Pierec et al., 3 Iowa 350; Lyon v. Day, 15 Iowa 469; Wilhelm v. Fimple, 31 Iowa 136, 7 Am. Rep. 117; Reese v. Hoeckel, 58 Cal. 281; Preble v. Abrahams, 88 Cal. 245, 26 Pac. 99, 22 Am. St. Rep. 301; Dobbs v. Norcross, 24 N. J. Eq. 329.

It is claimed by respondent in this case that it was not his intention to pay off the mortgage, and his counsel in his brief say that ''it seems most remarkable that defendant should expect Mr. Glassman to give her an unincumbered title to this land on October 1, 1902.'' And yet this is just what Glassman, by the

terms of his contract, agreed to do, with the exception
of the $250 of the mortgage which defendant assumed
to pay.   The sixth paragraph of the contract is as fol-
lows:   "The party of the first part (Glassman) agrees
to make to the party of the second part a warranty deed
upon the payment of two hundred and seventy-five
($275.00) dollars October 1st, 1902, subject to a mort-
gage of two hundred and fifty ($250.00) dollars, which
the party of the second part assumes and agrees to
pay."   It will thus be seen that by the express terms
of the contract the respondent was bound to furnish and
appellant entitled to receive a warranty deed to the
property mentioned, subject to a mortgage of $250 only,
and not a mortgage of $1,000, as contended by respond-
ent.   Section 1981, Rev. St. 1898, provides that a war-
ranty deed "shall have the effect of a conveyance in fee
simple to the grantee  .  .  .  with covenants from
the grantor  .  .  .  that the premises are free from all
incumbrances.  .  .  ."   It is urged in behalf of re-
spondent that as the mortgage would not fall due until
after the installment of the purchase price sued for in
this action became due, he could not furnish an unin-
cumbered title to the property, and that, as this was
known to the appellant at the time she signed the con-
tract, it must be presumed that she contracted with
reference to the risk of having eventually to pay the
entire mortgage of $1,000 to protect the property she
was contracting to purchase.   The record in this case
warrants no such presumption.   Rather the presump-
tion is that respondent having limited appellant's lia-
bility to pay $250 only of the mortgage lien of $1,000,
contracted with a view of being able to pay off at or
before the time specified for the delivery of the deed so
much of the mortgage as remained due after deducting
the $250 assumed by appellant, or that he had arranged
with the mortgagee to release that portion of the mort-
gaged property evidenced by the contract on payment
of the $250 by appellant.   However, these speculations
are unimportant.   The respondent contracted to fur-

nish a good title, and the fact that he was unable to do so is his misfortune, and not the fault of the appellant.

Respondent cites and relies upon the case of Leonard v. Woodruff, 23 Utah 494, 65 Pac. 199, in support of his position in this case. By an examination of that case it will be seen that it was understood and agreed between the parties to the transaction out of which that litigation arose that in the exchange of property the defendant, Woodruff, was to receive certain property from Leonard subject to a "squatter's" right or claim made to a portion of the property by one Stewart. The court held that, Woodruff having contracted with reference to the squatter's right, and having agreed to accept the property subject to such right, he was bound thereby. On appeal the judgment of the trial court was affirmed. In this case, however, the record does not show that appellant agreed or that it was understood that she was to accept the deed subject to the entire mortgage lien then existing against the property, but, on the contrary, the contract specifically provides that the deed shall be subject to $250 only of this mortgage.

The judgment is reversed, with directions to the trial court to dismiss the case; the costs to be taxed against respondent.

BASKIN, C. J., concurs. BARTCH, J., concurs in the judgment of reversal.