[Civ. No. 10192.  Second Appellate District, Division One.—May 14, 1936.]

SIDNEY SMITH, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation) et al., Respondents.

Andrew M. Strong and Marcus Muskat for Appellant.

Freston & Files, Louis Ferrari, Edmund Nelson, Howard Waterman, Ralph E. Lewis, C. L. McFarland, Eugene Best and Mary C. McFarland for Respondents.

HAAS, J., *pro tem.*—The salient facts of this case as set forth in the brief of respondents Stella M. Atwood and Julia Myers, and the contention of the parties herein, are as follows:

"Respondents Atwood and Myers being the owners of a considerable tract of land in Riverside County, arranged with Messrs. Millar, Stearns, Davis and Webster, to subdivide and sell out the property." (A tract of 410 acres in the Perris Valley, Riverside County, known as Edgemont Gardens). "The mechanics of the arrangement were handled by means of a subdivision trust with the predecessor of the Bank of America National Trust and Savings Association, the other respondent herein, acting as trustee. The property was conveyed to the trustee by respondents Myers and Atwood and a declaration of trust executed by all of the parties.

"The trust agreement provides in brief as follows:

"It recites that the property has been conveyed to the trustee without consideration 'at the instance and request' of

Stearns, Davis and Webster, referred to in the instrument as 'Beneficiaries'. It further recites that the beneficiaries are indebted to respondents Atwood and Myers, called 'First Payees' therein, on a promissory note in the amount of $69,274.33, and are further indebted to four parties called 'Second Payees' therein, in varying amounts. This indebtedness is specifically declared to be secured by the beneficial interests of the beneficiaries.

"The terms and provisions of the trust are as follows:

"First: To sell and convey the property, to subscribe to a map and dedicate streets. The prices of lots are to be fixed by the beneficiaries, but until all the items of indebtedness to the payees are paid in full a minimum schedule is provided for.

"Second: A schedule of release prices is set up providing that any lots sold may be released from the trust on payment according to that schedule.

"Third: The beneficiaries agree to pay taxes, assessments, costs of the trust, the defense of any actions, to pay for all improvements, to install a pipe line system, and to keep the property free of liens, and the trustee is authorized to make these payments from any funds belonging to them.

"Fourth: The distribution of the proceeds of sales of lots is provided for, going first to the payees up to a certain amount and in a certain order, and second to selling expenses, and third to the beneficiaries.

"Fifth: Guarantees of title are to be provided at the expense of the beneficiaries.

"Sixth: Any sale, transfer, pledge or hypothecation of beneficial interest must be registered with the trustee.

"Seventh: The payment of any inheritance, income, or other taxes is provided for.

"Eighth: The remedy of any payee or the trustee in case of the default of any beneficiary is set out providing in brief for a written declaration of default and demand for sale to be served on the Trustee. Three months shall thereafter elapse and then a sale of the 'entire beneficial interest under this trust (i. e.) the entire interest under this trust of the said beneficiary or beneficiaries, or such portion of such entire beneficiary's or beneficiaries' interest as may be necessary to satisfy such default' shall be had after publication of notice

for four successive weeks in a newspaper. The trustee shall, at the sale, make and deliver to the purchaser an assignment of the beneficial interest so sold, and the purchaser is to have all of the rights and privileges of the original beneficiary or original beneficiaries thereunder which properly pass with said assignment 'subject, however, to all of the terms, conditions or obligations of this trust including the lien of any indebtedness secured hereunder which is prior in lien to that of the party for whose benefit such foreclosure sale is held, but freed from the liens of all subordinate or inferior demands against the same'.

"The distribution of the proceeds of sale is provided for and it is agreed that all beneficial interests are assigned and conveyed to the trustee for the purpose of making the foreclosure sale:

"Ninth: Provision is made for the protection of the various beneficiaries or their assignees in the event that other beneficiaries should default in any particulars.

"Tenth: This paragraph . . . in full is as follows: 'It is distinctly understood that the interest under this trust and of each beneficiary is personal property and that no such beneficiary has or shall have any right, title or interest in and to the property covered hereby, nor has any right or power in any manner to apply for or secure the dissolution or termination of this trust or the partition or division of any of the trust property; the sole right and power of each beneficiary hereunder being to enforce the performance of the terms of this trust as expressly set forth in this declaration, with the understanding, however, that in the event the beneficial interest hereunder becomes vested in a purchaser under the foreclosure sale provided for in paragraph Eighth hereof on account of default in any of the obligations in favor of the First Payees hereunder, that such purchaser shall have the right to demand of the Trustee the conveyance of the real property then held hereunder, except such portion thereof as may be described in outstanding contracts of sale issued by the Trustee as authorized in paragraph First hereof; provided, however, that as to such outstanding contracts of sale, the Trustee shall continue to collect and account to such purchaser who has become beneficiary for all amounts due thereon as and when collected less its fees as provided in

paragraph Eleventh hereof; and provided, further, that if any default should occur on the part of any of the lot buyers, on such outstanding contracts of sale, the Trustee, after such proceedings have been taken at the expense of such beneficiary as will in its opinion dispose of all further equity of such lot purchasers in the lots agreed to be sold to them, shall convey such lots upon demand to such beneficiary.'

"Eleventh : Provides for the fees of the trustee under various contingencies which may arise under the trust.

"Twelfth: Provides for the liabilities of the trustee.

"Thereafter Messrs. Millar, Stearns, Davis and Webster entered into a contract with appellant Smith for the installation of a water system on the property and he agreed to accept in payment therefor, promissory notes of the said parties, and an assignment of seventy-five per cent of the monies to be paid to them under the terms of the trust, to be applied on the payment of the notes. In this regard, appellant's contract provides as follows: 'It is further understood and agreed by and between the parties hereto, that there has been a certain Declaration of Trust drawn between the parties of the second part and the Merchants National Trust and Savings Bank, Hellman Branch, 7th and Spring Streets, Los Angeles, which said Declaration of Trust bears date of May 3, 1927, and contains provisions therein that the parties of the second part, to this contract, are to receive the first twenty per cent from any sale or sales that might be made of any portion of said land referred to in this contract, and more particularly referred to as Edgemont Garden, for the selling expense of each lot; that the remainder of said purchase price for said lot or lots so sold is to be paid into the trust fund created by said Trust Agreement, and said parties of the second part hereto agree to, and do hereby, sell, assign, transfer and set over unto the said party of the first part, 75 per cent of any and all money paid into said trust fund, which, according to the terms of said Declaration of Trust, is to be paid to said parties of the second part, and said sum or sums shall be paid to the party of the first part on the 1st of each and every month by the Merchants National Trust and Savings Bank, Hellman Branch, and said Merchants National Trust and Savings Bank, Hellman Branch, 7th and Spring Streets, is hereby, irrevocably, authorized, instructed,

empowered and directed to pay over to said party of the first part, Sidney Smith, Contractor, 75 per cent of all the money so paid into said Trust fund by reason of the sale of any of said lots or parcels of land referred to therein and heretofore referred to as Edgemont Gardens, or otherwise.'

"It will be noted that appellant Smith had no lien on the real property involved, either by a mechanics lien, mortgage, deed, trust deed, or otherwise, only an assignment of '75 per cent of any or all money paid into said trust fund which according to the terms of said declaration of trust is to be paid to the said parties of the second part.'

"After some months of operation the payments coming to the respondents Myers and Atwood having fallen into default, the beneficial interest of Messrs. Millar, Stearns, Davis and Webster, appellant's assignors, was sold as personalty, after proceedings had strictly in conformity with the provisions of the trust agreement, thereby terminating the possibility of any more funds becoming available to appellant under the terms of his assignment.

"Appellant now contends that the interest of his assignors in the trust was an equitable title or interest in the *corpus* thereof and constituted real property and can only be foreclosed as such, and later in his brief, that even if it was personalty and the foreclosure sale valid, the sale was made subject to his seventy-five per cent assignment and his interest was not eliminated by the sale.

"Respondents contend: First, that the beneficial interests under the trust were personal property and their foreclosure and sale as such was valid. Second, that the sale eliminated appellant's assignment and no further funds are available to him."

We are impressed with the able argument of appellant. His thoroughness of research and deduction cannot be questioned. In arriving at a solution of abstract questions and in following the devious courses taken by the title to property involved in various transactions, we, however, sometimes lose sight of the full intention of the parties to these transactions. ▪ The primary rule in the construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the creator. (*Title Ins. & Trust Co.* v. *Duffil,* 191 Cal. 629 [218 Pac. 14].)

It is apparent from the facts set forth in the reporter's transcript and briefs that what the parties intended in this case was to place a large tract of land in Perris Valley, Riverside County, on the market to be sold as subdivided into smaller tracts, to have a water system established for the purpose of furnishing water to the tract and to pay for the land and the water, in a large part at least, out of the proceeds of the sales of the land so subdivided and furnished with water. This project they intended to carry out by establishing a trust and through a trustee, — an ordinary method of subdividing, improving and selling land in smaller subdivisions in California. They proceeded with their organization, making the defendant bank the trustee and negotiated with plaintiff to have him establish the water system for the price of $66,000, represented by sixty-six notes of $1,000 each, by making a written assignment to him of 75 per cent of the amount of money to which the beneficiaries should be entitled under said declaration of trust, *"by reason of the sale of any of said lots or parcels of land"* in Edgemont Gardens, a tract of some 410 acres, the said subdivision. This water system plaintiff installed according to his agreement. The bank was not a party to the contract but accepted the assignment of trust funds therein named. The trust itself provides specifically that "the interest under this trust and of each beneficiary is personal property".

It appears that certain of the lots were sold, and certain moneys paid into the trust fund, and that plaintiff received $4,186.25.

The note due Atwood and Myers, the first payees and vendors of the land, fell into default and at the request of these parties, quoting from the brief of respondent bank, "the bank . . . held a foreclosure sale of the beneficial interests in the trust, which formed the security for the obligation, and the creditors, Atwood and Myers" (holders of the first lien created by the trust agreement) "bought such beneficial interest in at the sale", foreclosing the interest of the second lienholders (second payees) and precluding payment of any further moneys to the original beneficiaries, the assignors, to Sidney Smith, appellant, and hence to him leaving $65,575 unpaid to him. Hence this suit to determine whether the foreclosure was effective and whether Sidney Smith, appellant, owns an interest in the land.

■ This brings us to the question whether the beneficial interests under the trust were personal property and hence properly foreclosed, or interests in realty, and hence not properly foreclosed, and whether the trust accomplished a conversion from real to personal property.

Appellant goes to some length to differentiate between the "title" to the property and the "estate" in the property. In this regard one must differentiate between a trust established for a perfunctory purpose only, and one established with authority in the *trustee* to alienate the estate and vest title. Neither the legal title nor the equitable title can be said to reside in a party who can do nothing more than receive and disburse surplus funds after payment of costs. In *King* v. *Gotz,* 70 Cal. 236, 240 [11 Pac. 656, 658], Mr. Commissioner Searles states, "It follows from these provisions (which modify section 863 of the same code) that the trustor of an express trust, *except as to his trustee* and those holding under him, is treated as the holder of the legal title." (Italics ours.) (The reference is to the Civil Code, section 863, and sections modifying.) In the case before us the purchasers at the foreclosure sale stepped into the shoes of the trustee upon such foreclosure and thus the clause "and those holding under him" would preclude the beneficiaries from asserting any title against the respondents Atwood and Myers. But, furthermore, it must be borne in mind that the word "title" carries a different meaning under different circumstances and in different relations. The meaning given to it in *King* v. *Gotz, supra,* was that estate or interest residing in the trustor before fulfillment of the trust provisions. In the case before us the trust provisions were fulfilled when the bank carried out its foreclosure proceedings to completion and it was thereafter neither possessed of title nor estate. As stated in *Skelly Oil Co.* v. *Kelly,* 134 Kan. 176 [5 Pac. (2d) 823, 824], "The word title has a variety of meanings. It sometimes connotes the means by which property in land is established, as in the expression 'chain of title'. It sometimes means 'property' or 'ownership' in the sense of the interest one has in land. A common meaning is complete ownership, in the sense of all the rights, privileges, powers and immunities an owner may have with respect to land." We must conclude that our appellate courts in referring to the passing of title under a deed of trust had in mind the

passing of the complete ownership in fee, under the axiom of the law that words must be given the meaning most commonly ascribed to them. Upon reading the trust agreement, as in the present case, we find no doubt nor uncertainty of the meaning of its provisions, and we find no word or words reserving to the beneficiaries any title or estate, legal or equitable, in themselves, but to the contrary do find repeated statements as in paragraph tenth of the trust agreement, to the effect that "the interest under this trust and of each beneficiary is personal property and that no such beneficiary has or shall have any right, title or interest in and to the property covered hereby". While it is true that words in a trust agreement to this effect do not *create* a conversion of real property to personal property, it throws some light upon the intention of the parties to the trust agreement, and, as stated, the *intention* is the criterion. Keeping this in mind we may go to the trust agreement itself to find what burden it cast upon the trustee, for the purpose of the trust must ordinarily be ascertained from the trust agreement. (65 Cor-Jur., sec. 264, p. 513, and notes.) It provides that the trustee holds the *title in trust:* (1) to sell and convey the property; (2) to release from the lien of the indebtedness secured by it any and all lots; (3) to receive and disburse the moneys received from the sale of lots in a manner provided by the trust deed; (4) to sell the beneficial interest created by the trust agreement as may be necessary to satisfy defaults and reasonable expenses and trust agreements; (5) and to publish the required notices therefor; (6) and may close the trust "by the sale of all the property hereunder; provided, however, that in the event said trust should be closed by the conveyance of said property or *any remaining unsold portions thereof to the beneficiaries* or their nominees without consideration" the trustee shall receive a fee therefor. We are of the opinion that this clothes the trustee with all the *indicia* of ownership while carrying the burden of the trust exclusive of any ownership in the beneficiaries during the life of the trust, and while the beneficiaries are called upon by the trust to bear and pay all taxes, costs, fees and expenses and all claims, liens and encumbrances affecting the title to the property this is nothing more than a condition exacted by the trustee before it will agree to assume the trust burden and is not indicative of

any reservation of title or vesting of title or estate in the beneficiaries.

This trust agreement differs materially from the ordinary trust deed given for the security of a debt which conveys the legal title only to the trustee so far as may be necessary to the execution of the trust, i. e., to enforce the payment of the debt. Such a trust deed ''carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt.'' (*Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644, at 656 [20 Pac. (2d) 940, 944].)

In short, having no title or estate when they entered into the agreement with the appellant, Sidney Smith, they could pass none on to him. If, then, the beneficiaries have neither reserved to them nor vested in them any title or estate during the life of the trust, they are, of course, themselves entirely closed out if and when the trustee forecloses upon default to satisfy the claims of the first payees, as in this case. We need go no further than to an analysis of the trust agreement itself to come to such a conclusion. If the beneficiaries are thus cut off from any redress against the trustee it follows that the appellant herein, who has succeeded to no greater estate or right than the beneficiaries had, is also powerless to enforce any claim against the trustee. ''One cannot transfer to another a larger right than he himself has.'' (Maxims, vol. 1, New Calif. Digest, p. 28, and cases cited.)

It is made quite clear from the trust agreement itself that during the life of the trust the entire title and estate is in the trustee; when, upon foreclosure proceedings, it ''passes title'' and estate to the first payees, it ceases to be burdened with the trust and the title and estate as well, and the trustee is no longer answerable to appellant for payments called for by his agreement with the beneficiaries. Appellant's claim was therefore but a chose in action, a right to receive 75 per cent of the moneys payable to the beneficiaries as long as there was money due the beneficiaries in the hands of the trustee according to the interpretation given to section 863 of the Civil Code and sections amending it, by the court in *In re Walkerly,* 108 Cal. 627 [41 Pac. 772, 49 Am. St. Rep. 97] : The trust agreement vests ''the whole legal and equitable estate which the testator enjoyed'' and ''the benefici-

aries . . . take no estate as such''. Any other interpretation would defeat the purpose of the trust (65 Cor. Jur., p. 513) and overthrow the too well-established doctrine in this state held to be the law here in like trusts, even though it is a fiction of the law, that every express trust on real property vests the whole estate in the trustee (section 863 of the Civil Code). The interest of the appellant herein must be held to have been personal property (*Craven* v. *Dominguez Estate Co.*, 72 Cal. App. 713, at 718 [237 Pac. 821]), and not an interest in realty. ''As against the trustee'' (under an express trust) ''and those lawfully claiming under him'' (the trustee) ''the beneficiary has no interest in the property itself, but only in the proceeds thereof after the property has been sold by the trustee''. (*Craven* v. *Dominguez Estate Co.*, *supra*.) (See, also, *Houghton* v. *Pacific Southwest Trust & Savings Bank et al.*, 111 Cal. App. 509 [295 Pac. 1079].)

As it must be held that appellant Smith never did have any lien, title or estate in the *corpus* of the trust, either legal or equitable, he is not in a position to set up the claim that the trustee's sale is void because no notice of sale was recorded under section 2924 of the Civil Code, and that the notice of sale did not describe the real property as required by section 692 of the Code of Civil Procedure. Such a claim could avail him nothing.

Thus it follows that the foreclosure and sale of the beneficial interests are valid as to the appellant; that the respondents have nothing to account for to appellant, no sums to pay; and that the judgment of the trial court should be, and it is, therefore, affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 12, 1936.