Calvin N. HALL and Rita M. Hall, Plaintiffs and Respondents,

v.

Perry C. FITZGERALD, et al., Defendants and Appellants.

No. 18371.

Supreme Court of Utah.

Oct. 7, 1983.

Robert B. Hansen, Salt Lake City, for defendants and appellants.

Lambertus Jansen, Con Kostopulos, Richard A. Rappaport, Salt Lake City, for plaintiffs and respondents.

OAKS, Justice:

This is a suit by vendors against purchasers to foreclose a real estate contract. The principal issue is the meaning of paragraph 16C of the uniform real estate contract, which entitles the vendors to treat a defaulted contract as a note and mortgage and proceed to foreclosure. The district court gave summary judgment for the vendors, and the purchasers appeal, arguing (1) that there was a genuine issue of material fact, and (2) that the vendors were not entitled to judgment as a matter of law. Purchasers also contend (3) that the judgment should have been set aside because of newly discovered evidence and (4) that the deficiency judgment was illegal.

The facts are complex. The vendors, the Halls, acquired their interest in this 1,840 acres of undeveloped land in Cedar Valley under a real estate contract (terms not in record) with Leland A. and Helen Fitzgerald. Vendors sold the land to purchasers, Perry G. and Carolyn Fitzgerald, under a real estate contract dated December 30, 1977. The price was $460,000, with $90,116 down and $40,000 payable annually. Purchasers failed to make the payment due on December 30, 1980. Vendors sent a notice of default on February 11, 1981, giving purchasers 30 days to remedy the default. On March 14, 1981, purchasers' counsel wrote, promising the $40,000 payment within ten days. On March 27, he wrote again, reporting that purchasers were trying to obtain a loan, but indicating that he could not give "any definite date when the payment will be made." Payment was never made, and on May 13, 1981, vendors brought this suit to foreclose the contract,

thus exercising the option identified in their notice of default.

Purchasers' answer, filed in July, admitted default. Vendors then filed appropriate affidavits and moved for summary judgment. Purchasers opposed in a memorandum that asserted, without supporting affidavits, two issues of fact: (1) The contract attached to the complaint was not the contract between the parties because it omitted a provision (orally agreed by the parties) for partial release of land as payments were made. (This had also been alleged in the answer.) (2) Vendors were not able to pass title to purchasers as a prerequisite to foreclosure as required in paragraph 16C because vendors still owed $279,327 to Leland A. and Helen Fitzgerald, who still held title pursuant to their contract. Purchasers also sought leave to amend their answer to allege their vendors' default in a $30,000 payment owed to Leland and Helen and to seek reformation of the subject contract to insert the release provision.

On November 23, 1981, the district court granted the vendors' motion, awarding summary judgment against the purchasers in the principal sum of $352,683.13 plus interest and decreeing foreclosure of the contract as prayed. A week later, the purchasers moved to set aside the judgment, renewing the contentions made in their motion to amend the answer (on which the court had made no ruling) and also showing, by affidavit of Leland A. Fitzgerald, the following facts. On June 10, 1981, Leland tendered Perry Fitzgerald's check for $40,-000 (for the overdue installment) to Calvin Hall, who refused to accept it. On that date, Hall owed Leland and Helen $30,000 on his contract to purchase the subject land. On June 12, Perry G. Fitzgerald paid $40,-000 to Leland, who executed a receipt stating, "This money to be applied on Cal Hall· payment when Cal Hall is willing to accept same." Leland's affidavit states that the payment was made "toward the purchase of said ground or similar ground depending upon whether or not Calvin Hall defaulted upon his contract with affiant," and states further that Leland had in fact applied the payment as follows: $30,000 plus interest toward Calvin Hall's purchase of the subject property and "the balance toward the next payment due from Calvin Hall." The purchasers' motions to set aside the summary judgment and for leave to file an amended answer were denied March 11, 1982, and this appeal followed.

1. Summary judgment is proper if (1) "there is no genuine issue as to any material fact" and (2) "the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); *Bangerter v. Poulton,* Utah, 663 P.2d 100, 102 (1983). Purchasers' contention that there was a genuine issue of material fact on whether the contract sought to be foreclosed was the contract originally entered into by the parties is incorrect for two reasons. First, purchasers made no showing that the release provision allegedly agreed to by the parties was "material" to the controversy between the parties to the default or to the relief granted therefor.

■ Second, even if the provision missing from the written contract attached to the complaint was material, the purchasers did not establish this issue in the manner required by law. Utah R.Civ.P. 56(e) provides as follows:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The vendors' motion, made and supported as provided in the Rule, averred by affidavit that the uniform real estate contract attached to the complaint was "a true and correct copy of the agreement" between the parties. Purchasers argue that they put this fact in issue by the allegation in their answer. The foregoing terms of the Rule and our recent decisions establish that allegations or denials in the pleadings are not a

sufficient basis for opposing summary judgment. *Franklin Financial v. New Empire Development Co.,* Utah, 659 P.2d 1040, 1044 (1983), and cases cited. There was no "issue of fact" that precluded summary judgment.

2. Purchasers' principal argument is that their vendors were not entitled to judgment as a matter of law because they failed to "pass title" to purchasers before foreclosing, as required by paragraph 16C of the contract:

> [Upon default, vendors] may elect to treat this contract as a note and mortgage, and pass title to the Buyer subject thereto, and proceed immediately to foreclose the same in accordance with the laws of the State of Utah . . . .

Vendors argue that this requirement was satisfied by their July 16, 1981, deposit with the district court of a warranty deed that conveyed the property from vendors to purchasers. However, purchasers contend that this conveyance was inadequate since vendors' title was not an unencumbered fee. Vendors had not yet received a conveyance from Leland A. and Helen Fitzgerald, to whom the vendors were still indebted on their contract to purchase. The resolution of this issue turns on the meaning of the word "title" in paragraph 16C of the uniform real estate contract.

■ In real estate transactions, "title" most often refers to an estate in fee simple, clear of all encumbrances or interests of any other person. *Smith v. Bank of America Nat. Trust & Savings Ass'n,* 14 Cal. App.2d 78, 85–86, 57 P.2d 1363, 1367 (1936); 77 Am.Jur.2d *Vendor and Purchaser* § 123 (1975). However, a contract "by its terms, or the circumstances leading up to and surrounding [a] transaction" may show that the parties intended another meaning. *Glassman v. Condon,* 27 Utah 463, 466, 76 P. 343, 344 (1904). *Accord, Smith v. Bank of America Nat. Trust & Savings Ass'n,* 14 Cal.App.2d at 85–86, 57 P.2d at 1367. Under such circumstances, "title" can refer to a wide array of estates or interests, including legal title, equitable title, or a mere right of possession. *Dover Veterans Council, Inc. v. City of Dover,* 119 N.H. 738, 407 A.2d 1195, 1196 (1979); 41A *Words and Phrases* 373–91 (1965); 73 C.J.S. *Property* § 15 (1951). Thus, an applicant for fire insurance who stated that "title" was in her name when in fact she was only purchasing the property on a real estate contract was not barred from coverage on the basis of false statement: "In common parlance, the term [title] is used to express ownership, regardless of any technical legal import, and an absolute equitable ownership fills the measure of common understanding quite as fully as legal ownership." *Baker v. State Insurance Co.,* 31 Or. 41, 48 P. 699, 701 (1897), and authorities cited therein. *Accord, McClellan v. Beatty,* 115 Ind.App. 173, 179, 53 N.E.2d 1013, 1016 (1944) (statute establishing purchase money resulting trust in party to whom conveyance is made or in whom "title" vests applies to any transfer of title, legal or equitable, including executory contract of sale).

■ In a uniform real estate contract—the usage of "title" at issue in this case—the vendor usually retains legal title and passes equitable title to the purchaser. *C & J Industries, Inc. v. Bailey,* Utah, 618 P.2d 58, 59 (1980); *Charter Township v. City of Saline,* 103 Mich.App. 99, 103, 302 N.W.2d 608, 609–10 (1981). Consequently, the "title" required to be passed in paragraph 16C was not the usual unencumbered fee simple estate with participation by no other person, because the vendors would have no such title to give, having passed equitable title to the purchasers when the contract was signed. In that circumstance, "title" would refer at most to the legal title retained by the vendor. However, in this case vendors have never possessed legal title since they were purchasing the property under a real estate contract.[1]

---

1. In drawing up their contract, the parties acknowledged that vendors did not have an unencumbered fee: "It is understood that there presently exists an obligation against said property in favor of Leland A. Fitzgerald and Helen S. Fitzgerald with an unpaid balance of $279,327, as of December 30, 1977." (Paragraph 6.)

Under the circumstances of this case, we hold that vendors fulfilled their contractual responsibility under paragraph 16C by delivering a warranty deed to the subject property. We reach this conclusion for three reasons.

First, the words "pass title" appear to have been added to the uniform real estate contract not to entitle purchasers to a perfect title, but only to make the contract's foreclosure remedy more analogous to a note and mortgage. Under the typical purchase-money note and mortgage arrangement, the vendor conveys his full ownership interest to the buyer and takes back a note for the balance due, as well as a mortgage on the property. The interest conveyed to the purchaser-mortgagor in that arrangement is the interest that will be sold at the foreclosure sale in the event of default.[2] The uniform real estate contract's 16C requirement of conveyance, which applies when the vendor elects to treat the contract as a note and mortgage, appears to be intended to put the purchaser under the contract—and through him, the purchaser at the foreclosure sale—in the same position he would have occupied if the transaction had commenced with a conveyance from the vendor.

Second, the uniform real estate contract signed by the parties was a form contract previously drafted and approved by representatives of the Bar, realtors, and land title companies. These individuals are aware of the predominance of uniform real estate contracts in property transactions and the common circumstance of successive and overlapping contracts on the same property, as in this case. Under such circumstances, it is unlikely that the draftsmen intended to require vendors to clear all previous obligations on property before being able to use the remedy of foreclosure. Rather, the reasonable approach is to allow previous obligations to be discharged from the proceeds of the foreclosure sale or to have the property sold subject to the outstanding obligations.

What is essential is that the vendor has conveyed all of his ownership in the property, so the purchaser and his successors, including those who take at the foreclosure sale, have the conventional clearance and warranties from that source. The use of the warranty deed in this case not only assured conveyance of all of the vendors' current interest, but would also automatically transfer to the grantees or their successors any "legal estate subsequently acquired." Such is the specific effect of our statute, U.C.A., 1953, § 57-1-10; *Cox v. Ney,* Utah, 580 P.2d 1085 (1978), as well as the related doctrine of estoppel by deed. 23 Am.Jur.2d *Deeds* § 294, *et seq.* (1965); Annot., 144 A.L.R. 554 (1943); Annot., 58 A.L.R. 345 (1929).

Finally, when the parties intended that a title free of all obligations be passed, they expressly so provided in the contract. Thus, with respect to foreclosure the contract only speaks of a "passage of title," but when describing the vendors' obligations upon payment of the full purchase price, it specifies "a good and sufficient warranty deed conveying the title . . . free and clear of all encumbrances except as herein mentioned."

3. Purchasers also argue that the district court erroneously denied their motion to set aside the judgment because of newly discovered evidence. This refers to their learning after summary judgment was granted that Leland A. Fitzgerald had applied their $40,000 payment toward the Halls' (their vendors') obligation to him.

Rule 60(b) of the Utah Rules of Civil Procedure gives the court discretion to "relieve a party . . . from a final judgment" for enumerated reasons, including "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The granting and denying of such relief is

---

2. Since the purchaser's equitable interest under a real estate contract can be the subject of a mortgage as well as a sale, *Lockhart Co. v. Anderson,* Utah, 646 P.2d 678, 679–80 (1982); 59 C.J.S. Mortgages § 75(c) & (e) (1949), the "full ownership" conveyance contemplated in this arrangement can involve merely an equitable interest, as well as a fee simple.

addressed to the sound discretion of the trial court and will not be upset on appeal unless there is an abuse of discretion. *Boyce v. Boyce,* Utah, 609 P.2d 928, 931–32 (1980) (quoting *Warren v. Dixon Ranch Co.,* 123 Utah 416, 419–20, 260 P.2d 741, 742–43 (1953)); 11 C. Wright & A. Miller, *Federal Practice and Procedure* 2857, 2872 (1973). *Cf. Doty v. Town of Cedar Hills,* Utah, 656 P.2d 993, 995 (1982). To qualify for this relief, the moving party must show that "by due diligence the evidence could not have been discovered and produced" before judgment was rendered. *Id.* at 995. *Accord, Miller Pontiac, Inc. v. Osborne,* Utah, 622 P.2d 800, 803 (1981); 11 C. Wright & A. Miller, *supra,* at 2859.

■ In this case, purchasers made no such showing. Indeed, their closeness to their relative, Leland A. Fitzgerald, as evidenced by the role he played in first attempting to make tender of the overdue $40,000 to the Halls in their behalf and then in accepting their payment himself, is strongly suggestive that the information on how he applied the Halls' payment was known to the purchasers or available for the asking. The district court did not abuse its discretion in denying the motion.

4. Finally, purchasers argue that a remand for trial is required because prior to the foreclosure sale the district court entered a personal judgment against them for any deficiency owing after the sale. § 78–37–2. They also argue that vendors will be unjustly enriched if there is a deficiency judgment. Vendors counter that these questions are moot because the subject real property was sold at a sheriff's sale on July 1, 1982, for the full judgment, and no deficiency was entered. Purchasers do not deny this in their briefs.

■ "If the requested judicial relief cannot affect the rights of the litigants, the case is moot and a court will normally refrain from adjudicating it on the merits." *Merhish v. H.A. Folsom & Associates,* Utah, 646 P.2d 731, 732 (1982) (quoting *Duran v. Morris,* Utah, 635 P.2d 43, 45 (1981)). Since the contingent deficiency judgment is now defunct and cannot affect the rights of the parties to this appeal, these questions are now moot and will not be adjudicated.

The judgment is affirmed. Costs to respondents.

HALL, C.J., and STEWART and DURHAM, JJ., and DOUGLAS L. CORNABY, District Judge, concur.

HOWE, J., having disqualified himself, does not participate herein; CORNABY, District Judge, sat.