**John Carl PUTVIN, Plaintiff and Appellee,**

v.

**Karen Larie THOMPSON, et al., Defendant and Appellant.**

**No. 930359–CA.**

Court of Appeals of Utah.

July 19, 1994.

Rehearing Denied July 19, 1994.

Daniel Darger (argued), Salt Lake City, for appellant.

Mitchell R. Barker (argued), Salt Lake City, for appellee.

Before BILLINGS, DAVIS and ORME, JJ.

## AMENDED OPINION[1]

DAVIS, Judge:

Appellant, Karen Larie Thompson, appeals a May 4, 1993 order denying her Rule 59 motion to alter or amend the trial court's prior judgment denying her Rule 60(b) motion to set aside a default judgment. We affirm.

The default judgment relates to a custody dispute between Thompson and her former cohabitee, John Carl Putvin. The two were never legally married, but lived in a polygamous relationship beginning in 1982, along with Putvin's legal wife, Donna Putvin. On May 13, 1988, Thompson gave birth to a daughter, the subject of the underlying custody dispute.

After Putvin and Thompson separated, they began legal proceedings to resolve custody of their daughter. At that time, attorney Chase Kimball represented Thompson. The court appointed a guardian ad litem for the child and ordered Dr. Patricia Smith to conduct and submit a custody evaluation. Dr. Smith conducted the evaluation and submitted it to the court. She recommended that Putvin have primary custody and that Thompson's visits be supervised. The parties later stipulated, through their attorneys, that the Smith evaluation be included in the findings of fact and conclusions of law.

On November 4, 1991, Thompson sent a letter to Putvin, which was distributed to his counsel, her counsel, the guardian ad litem, and the judge. The relevant portions of the letter follow:

> I will no longer fight with you to try and win custody. There is no reason to continue this battle in the courts, and I pray that you will cease this legal nightmare. I pray that the courts and you will be fair with my visitation and legal rights.
>
> . . . .
>
> I am going against the advice of Chase in making my decision not to sign your demands, and I know he will strongly disagree with me.
>
> . . . I feel that the only humane thing I can do in order to stop this atrocity is to let you have your way. I have no choice but let go and let God be your judge.
>
> . . . .
>
> . . . I hope that you will have the decency to be satisfied that you have full custody, and stop the threats against my friends and family.
>
> . . . .

---

1. The Opinion issued herein on June 8, 1994, is replaced by this Amended Opinion.

John, I want no part of your life from here on. And as far as Donna is concerned, I could not live with myself if I let my signature give Donna more rights to my own child than I have. Whatever rights she receives will never be sanctioned by me.

Nowhere in the letter did Thompson state or imply that she wished to discharge Kimball as her attorney. On the contrary, her reference to "Chase" and her stated expectation that he will "disagree" with her decision indicates she expected to have further consultation with him.

On November 12, 1991, the court recorded a minute entry from a telephonic conference involving the judge, counsel for both parties, and the child's guardian ad litem. The minute entry provided that "based on agreement of counsel [Putvin] will have custody of the child subject to supervised visitation to [Thompson] until such time as [Thompson] has resolved her problem." At this time, the court had Thompson's November 4, 1991 letter, along with the custody evaluation, before it.

On November 13, 1991, the trial court entered findings of fact, conclusions of law, and a default custody decree granting permanent custody to Putvin and requiring that he supervise Thompson's visitation. These findings incorporate Dr. Smith's court-ordered custody evaluation and Thompson's letter. Kimball signed the findings, conclusions and decree, signifying that, as Thompson's attorney, he approved the form of these documents.

Kimball made several more filings and appearances on behalf of Thompson including a January 27, 1992 notice of hearing and change of address, a January 30, 1992 motion for expedited hearing, a February 3, 1992 appearance requesting an expedited hearing, a February motion for unsupervised visitation, a February 13, 1992 request for ruling on the motion, a March 23, 1992 objection to proposed order, a March 30, 1992 request for ruling, and an April 14, 1992 approval of an order.

In addition, a memorandum and affidavit was filed January 31, 1992, in response to Putvin's February 3, 1992 motion requesting the court to require Kimball to "prove ... his authority and reveal precisely whom he represents in this matter." Kimball's memorandum stated that he would "produce his client, Karen Thompson, at a hearing to be held this coming Monday, and the court may satisfy itself that she is represented by the author at that time." Kimball's affidavit noted that Putvin had "no reasonable grounds to question that I have authority to represent Karen Thompson, as they have been dealing with me from the inception in this matter, or for nigh onto a year." Just as Kimball had promised, Thompson appeared with him on February 3, 1992, in the court's chambers for a hearing on Putvin's motion.

On April 30, 1992, Kimball filed a motion to withdraw as counsel. On May 8, 1992, attorney Daniel Darger filed his appearance for Thompson. That same month, on May 26, 1992, Darger moved to set aside the default judgment pursuant to Utah Rule of Civil Procedure 60(b). This motion, filed more than five months after the court entered its custody order, was based on several grounds including that the decree went beyond the relief asked for in the complaint, that the decree went beyond the actual decision of the court, that the court failed to enter Thompson's default, that the record included no written stipulation, and that the findings of fact were insufficient to support a custody award.

During the pendency of the Rule 60(b) motion, the parties engaged in lengthy evidentiary proceedings to determine whether Thompson's visitation should continue to be supervised. The hearings resulted in part from the court's earlier determination that Thompson's visitation would be supervised "until such time as [Thompson] has resolved her problem."

The visitation hearing took place over a period of five days with extensive testimony from a second appointed custody evaluator, a social worker, a clinical psychologist who worked with Putvin and the child, a county attorney investigator, two of Thompson's religious leaders, Thompson's father, another custody evaluator, a private investigator, the child's therapist, Putvin, and a member of

Thompson's religious community. Evidence included the second custody evaluation, along with various investigative reports. The trial court noted that it had relaxed the relevancy standard for admission of evidence given that the original custody and visitation decision had not been litigated. Following this hearing, the court modified its earlier visitation order and, on March 11, 1993, denied Thompson's motion under Rule 60(b).

On March 24, 1993, Thompson moved to alter or amend judgment pursuant to Utah Rule of Civil Procedure 59. Thompson's motion was based on grounds of newly discovered evidence. Through this motion, Thompson sought to set aside the original default judgment, and to set aside the court's denial of the earlier Rule 60(b) motion. The court heard this motion April 19, 1993.

The "newly discovered evidence" consisted of affidavits by Thompson's former and current attorneys, Kimball and Darger. The two affidavits provide retrospective analyses of Thompson's November 4, 1991 letter.

Kimball's affidavit was signed March 17, 1993, within the ten day period required under Rule 59. Kimball noted he received Thompson's November 4, 1991 letter before he had reached any agreement with Putvin's counsel regarding custody and visitation. Kimball stated that the November 4, 1991 letter "directed that I not act further on her behalf in fighting Plaintiff. At that time I did not realize that she was discharging me but, in retrospect, I believe I was discharged as her attorney by this letter." Kimball mentioned that during the November 12, 1991 telephonic pretrial hearing, he did not stipulate or agree that his client's answer and counterclaim be withdrawn or stricken. Kimball said he initially refused to sign the proposed findings of facts, conclusions of law and order because he felt they misrepresented his position in stating that he agreed to withdraw the answer and counterclaim, and that he stipulated that the court should consider the Smith custody evaluation, and the November 4, 1991 letter.

Kimball further stated that he signed the documents in return for Putvin's oral promise to drop a personal injury suit against him for emotional distress and to ensure Thompson would have ample time with her daughter.

Finally, Kimball claimed, "At no time did Ms. Thompson authorize me to approve the documents attached hereto [the final custody findings, conclusions and order]. Nor did she authorize me to withdraw her answer or counterclaim and I did not." He also claims that "Mr. Barker was aware that I had been discharged prior to my signing the approval of these documents."

During the visitation hearings, which took place in July 1992, Thompson also claimed she had never authorized Kimball to withdraw her answer and to let the action be resolved through default. However, she admitted that, shortly after the decree had been entered, she was aware that Putvin had custody and that she had supervised visitation.

Darger's affidavit, signed March 22, 1993, stated that he entered his appearance May 4, 1992. He stated that shortly after this time, Kimball told him he believed the November 4, 1991 letter was really a letter of discharge. Darger stated that on November 18, 1992, Kimball told him he would be willing to execute an affidavit describing the circumstances surrounding his execution of the default decree, and that he received Kimball's statement December 9, 1992. Darger stated he did not put this statement into affidavit form until after March 11, 1993.

On May 4, 1993, the trial court denied the Rule 59 motion and imposed sanctions of $380 against Thompson. Thompson filed a notice of appeal on June 2, 1993, from a final order entered May 4, 1993 denying her motion to alter or amend the court's prior judgment denying her prior motion to set aside the default judgment.

## TIMELINESS

■ The Rule 59 motion may have been served prior to filing and within the 10 day period required by Rule 59. If so, filing the motion with the court some two days later is a reasonable time within the meaning of Rule 5(d), Utah Rules of Civil Procedure. *Dehm v. Dehm*, 545 P.2d 525 (Utah 1976).

Notwithstanding the timeliness of service or filing, however, the fact that the motion was captioned as a Rule 59 motion is not dispositive. In determining the type of motion filed, we look to the substance of a motion rather than its caption. *See Brunetti v. Mascaro,* 854 P.2d 555, 557 (Utah App. 1993). The "newly discovered evidence" could have been raised pursuant to either Rule 59 or Rule 60. Because Thompson filed the motion within the three months allowed by Rule 60, and without definitely deciding, we will treat the motion as one made pursuant to Rule 60 for purposes of this appeal.

## NEWLY DISCOVERED EVIDENCE

In reaching the merits of the appeal, we emphasize its scope: to consider whether the trial court abused its discretion in refusing to set aside its prior order denying a Rule 60(b) motion to set aside the default judgment. *Hall v. Fitzgerald,* 671 P.2d 224, 228–29 (Utah 1983). We first consider whether the court abused its discretion in determining that Kimball's and Darger's affidavits did not constitute newly discovered evidence pursuant to Rule 60.

Utah Rule of Civil Procedure 60(b)(2) grants a trial court discretion to relieve a party from a final judgment or order on the ground that there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

Darger's affidavit stated that he learned of Kimball's new position on November 18, 1992, that he had Kimball's statement on December 9, 1992, and that Kimball executed his affidavit on March 17, 1993. The trial court denied Thompson's Rule 60(b) motion on March 11, 1993, some four months after Darger discovered the "new" evidence. The court also denied Thompson's subsequent Rule 59 motion on May 4, 1993, some six months after Darger discovered the "new" evidence. Thus, the "newly discovered" evidence was discovered or discoverable in ample time to move for relief under Rule 59(b) in the first instance; therefore, it does not meet the requirements of Rule 60(b)(2). Even the date Kimball executed his affidavit was within the ten-day period under Rule 59.

Thus, the trial court acted within its discretion in denying the second motion for relief.

Moreover, the "newly discovered evidence" is not newly discovered and is merely cumulative. That is, Kimball and Darger provided retrospective analyses of a document (the November 4, 1991 letter) which was before the trial court well before it entered the custody decree. Also, Kimball's statement that he was coerced into signing the custody documents rings hollow given that he took no immediate action to set aside the custody order and did not execute an affidavit until more than fifteen months after the court entered the custody order.

Kimball and Thompson's claim that Kimball acted without authority is contradicted by the fact that Thompson continued to use Kimball's services and to appear with him in court well after she now claims she discharged him.

Finally, the November 4, 1991 letter speaks for itself. It reveals Thompson's decision, which Kimball undertook to implement, to end the custody litigation as soon as possible: "I will no longer fight with you to try and win custody. There is no reason to continue this battle in the courts.... I feel that the only humane thing I can do in order to stop this atrocity is to let you have your way. I have no choice but let go and let God be your judge.... I hope that you will have the decency to be satisfied that you have full custody."

## CONCLUSION

We find no abuse of discretion in the court's denying Thompson's second motion for relief because (1) Darger had all the "newly discovered evidence" well before the disposition of Thompson's first motion for relief and well within the ten-day period for Rule 59 relief; (2) the "newly discovered evidence" was not newly discovered; (3) the "newly discovered evidence" was merely cumulative; and (4) the November 11, 1991 letter does not purport to discharge Kimball, but on the contrary, memorializes her deci-

sion to withdraw from the dispute, which decision Kimball set about to implement.

BILLINGS and ORME, JJ., concur.