Chicago Federal Savings and Loan Association, Plaintiff-Appellee, v. Frank S. Cacciatore, et al., Defendants-Appellees, and United States of America, Defendant-Appellant.

## Gen. No. 48,238.

First District, First Division.

December 19, 1961.

Louis F. Oberdorfer, Assistant Attorney General, and Lee A. Jackson, A. F. Prescott, and Lloyd J. Keno, Attorneys, Department of Justice, Washington, D. C. (James P. O'Brien, United States Attorney, and Alice M. McClanahan, Assistant United States Attorney), for appellant.

William H. Avery, Walter J. Cummings, Jr., and William H. Thigpen, for David J. Peilet and Chicago Title & Trust Co., Trustee, defendants-appellees (Sidley, Austin, Burgess & Smith, of counsel).

MR. JUSTICE ENGLISH delivered the opinion of the court.

This case is here on appeal of the United States from a decree of foreclosure and sale in which the government contends that its tax lien was not given adequate priority.

The facts are undisputed and will be set forth in chronological order.

By trust agreement in 1944, a land trust was created with Mutual National Bank of Chicago as trustee and Frank S. Cacciatore as sole beneficiary during his life, remainder to his wife. The pertinent provisions of this agreement will be detailed later in this opinion.

In 1950 the real estate concerned in this foreclosure suit was conveyed to Mutual National as trustee under the land trust.

On March 8, 1957 the land trustee gave a first mortgage to Chicago Federal Savings & Loan Association to secure a note for $28,500. This mortgage was recorded March 15, 1957.

Also on March 8, 1957 federal withholding taxes, penalties and interest were assessed against Cacciatore and on July 29, 1957 a notice of federal tax lien was filed against Cacciatore in the office of the Recorder of Deeds of Cook County.

On June 3, 1958 the land trustee executed a second mortgage trust deed to Chicago Title & Trust Company, as trustee (recorded June 10, 1958) to secure a note for $10,000 owned by David J. Peilet.

On December 4, 1958 the land trustee executed a third mortgage trust deed to Chicago Title & Trust Company, as trustee (recorded December 17, 1958) to secure a note for $4,535 owned by Sam and Vita Dattulo.

On December 19, 1958 the Cacciatores assigned their beneficial interest in the land trust to their attorney, Stephen L. Ruff.

On July 21, 1959 Chicago Federal instituted this action to foreclose the first mortgage, and the second and third mortgagees answered requesting foreclosure

of their mortgages also. The government's answer asserted its tax lien in the amount of $4,826.31, plus interest, and sought satisfaction through priority over the mortgages.

On July 28, 1959 the first mortgagee paid the 1958 general taxes on the real estate in the amount of $663.

In February, 1960 Ronald Wayne & Company, Inc., purchased the first mortgage and related paper, and was substituted as plaintiff.

In the foreclosure suit there was a reference to a Master in Chancery who, after hearing all the evidence, filed his report in June, 1960. On July 26, 1960 the court approved the master's report and, over the government's objection, entered a decree of sale establishing the following priorities for payment out of the proceeds of sale:

1. Ronald Wayne & Company, Inc.
 For amount due under first mortgage, including amount paid on 1958 general taxes $38,903.49
2. David J. Peilet
 For amount due under second mortgage 12,426.64
3. Sam and Vita Dattulo
 For amount due under third mortgage 5,254.33
4. United States
 For amount due under tax lien 4,826.31
5. Stephen L. Ruff Remainder

The government has appealed from this decree on the grounds that the federal tax lien is entitled to priority: (1) over the second and third mortgages, because the notice of federal tax lien had been recorded prior to the creation of those mortgages; and (2) over the first mortgage to the extent of the payment for 1958 general taxes, because those taxes arose and

134

were paid after the notice of federal tax lien had been recorded.

A good many of the legal principles requiring our consideration are so well settled that the parties find themselves in substantial agreement through most of the stages involved, only to diverge radically at the conclusion.

The federal tax lien was created by act of Congress. The pertinent sections are found in the Internal Revenue Code of 1954 and provide as follows: [1]

> Sec. 6321. Lien for taxes.
>
> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
>
> Sec. 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors.
>
> (a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—
>
> (1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice;

[1] 26 USC 1958 ed, §§ 6321, 6323. The taxes assessed against Cacciatore were for the period 1952 to 1956. The Internal Revenue Code as it existed prior to 1954 contained substantially the same provisions. 26 USC 1952 ed, §§ 3670, 3672.

■ In applying this statute to the facts of the instant case, we must look to Illinois law for determination of whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach.[2] (Aquilino v. United States, 363 US 509.) Thus, state law controls our conclusion as to the nature of the taxpayer's legal interest in the property sought to be reached, and federal law becomes our guide only in defining the consequences to be attached to such state-created rights by virtue of the federal lien law. (Morgan v. Commissioner, 309 US 78; United States v. Bess, 357 US 51; United States v. Durham Lumber Co., 363 US 522.)

Our primary source of information concerning the relationships among the parties is, necessarily, the trust agreement itself.[3] This agreement contains customary clauses employed and approved for many dec-

[2] Dramatic demonstration of this rule was furnished on December 1, 1961 when the government filed a memorandum in the Supreme Court of the United States asking that court to vacate a judgment which the government had obtained in a contested case in the District Court and had preserved through affirmance in the Court of Appeals. This unusual action was taken by the government so that the Court of Appeals, on remand, might reconsider and make further determination of applicable Illinois law in the light of the government's eleventh hour concession on another point (inchoateness of competing liens) which had been the basis for the government's success in both lower courts. (United States v. Crest Finance Co., Inc., 291 Fed2d 1; Crest Finance Co., Inc. v. United States, Supreme Court No 325, October Term 1961.)

[3] The trust agreement contains, among others, the following provisions:

. . . when [the Trustee has taken title to any] real estate deeded to it as Trustee hereunder, it will hold it for the uses and purposes and upon the trusts herein set forth. The following named persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to-wit:

Frank S. Cacciatore, for and during the term of his natural life, and after his death if any property still remains in this trust, then for the use and benefit of his wife, Lucille Cacciatore.

136

ades in the creation of an "Illinois land trust." The
1950 deed of the real estate in question to the land

It Is Understood And Agreed between the parties hereto and by
any person or persons who may become entitled to any interest
under this trust, that the interest of any beneficiary hereunder
shall consist solely of a power of direction to deal with the title
to said property and to manage and control said property as here-
inafter provided, and the right to receive the proceeds from rentals
and from mortgages, sales or other disposition of said premises,
and that such right in the avails of said property shall be deemed
to be personal property, and may be assigned and transferred as
such; that in case of the death of any beneficiary hereunder dur-
ing the existence of this trust, his or her right and interest here-
under shall except as herein otherwise specifically provided, pass
to his or her executor or administrator, and not to his or her heirs
at law; and that no beneficiary now has, and that no beneficiary
hereunder at any time shall have any right, title or interest in or to
any portion of said real estate as such, either legal or equitable,
but only an interest in the earnings, avails and proceeds as afore-
said. The death of any beneficiary hereunder shall not terminate
the trust nor in any manner affect the powers of the Trustee
hereunder.

· · · · ·

It shall not be the duty of the purchaser of said premises or of any
part thereof to see to the application of the purchase money paid
therefor; nor shall anyone who may deal with said Trustee be re-
quired or privileged to inquire into the necessity or expediency of
any act of said Trustee, or of the provisions of this instrument.

This trust agreement shall not be placed on record in the Re-
corder's Office of the county in which the land is situated, or
elsewhere, and the recording of the same shall not be considered
as notice of the rights of any person hereunder, derogatory to the
title or powers of said Trustee.

· · · · ·

. . . that said [Trustee] will deal with said real estate only when.
authorized to do so in writing, and that it will (notwithstanding
any change in the beneficiary or beneficiaries hereunder, unless
otherwise directed in writing by the beneficiaries) on the written
direction of

Frank S. Cacciatore, and after his death Lucille Cacciatore,

or on the written direction of such person or persons as may be
beneficiary or beneficiaries at the time, make deeds for, or other-

137

trustee also contained a description of the beneficiary's interest in the land trust.[4]

 Illinois authorities relative to the characteristics of such a trust are abundant and consistent in recognizing the validity of such a device to place in the trustee the full title to the real estate, both legal and equitable.[5] The trust is an active trust not affected by

---

wise deal with the title to said real estate, provided, however, that the Trustee shall not be required to enter into any personal obligation or liability in dealing with said land or to make itself liable for any damages, costs, expenses, fines or penalties, or to deal with the title so long as any money is due it hereunder. Otherwise, the Trustee shall not be required to inquire into the propriety of any such direction.

The beneficiary or beneficiaries hereunder shall in his, her or their own right have the management of said property and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall handle the rents thereof and the proceeds of any sales of said property, and said Trustee shall not be called upon to do anything in the management or control of said property or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and after the payment to it of all money necessary to carry out said instructions. No beneficiary hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally.

. . . . .

May the name of any beneficiary be disclosed to the public? No.

[4] This provision in the recorded deed read:

The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other disposition of said real estate, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds thereof as aforesaid.

[5] In this respect it differs from a common law land trust which accomplishes a split, with the legal title in the trustee and the equitable title in the beneficiary.

the Statute of Uses. The interest of the beneficiary is a personal property interest only. (Seno v. Franke, 20 Ill2d 70, 169 NE2d 335; Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank, 300 Ill App 329, 20 NE2d 992; Robinson v. Chicago National Bank, 32 Ill App2d 55, 176 NE2d 659.)

██ The intentions of the parties are to be determined from the language of the trust agreement and will be given effect unless contrary to law or public policy. Far from being contrary to public policy, trusts of this type have long been upheld as a means of enabling third parties to deal with real estate in reliance upon the record title of a trustee. Thus, for example, in Chicago Title & Trust Co. v. Mercantile Bank, 300 Ill App 329, 20 NE2d 992, it was held that a judgment against a land trust beneficiary did not constitute a lien against the real estate. The court there said (at page 336):

> "The rule has been long and well established in this State that the form of deed of trust and trust agreement before us creates a valid and subsisting trust under which the interest of the beneficiary is personal property only and not real estate. It has been repeatedly held that an agreement creating an interest in the profits or proceeds of the sale of real estate creates no interest in or lien upon the land itself. (Morrill v. Colehour, 82 Ill 618; Roby v. Colehour, 135 Ill 300, 25 NE 777; MacDonald v. Dexter, 234 Ill 517, 85 NE 209.)"

As another example, it has been held that only the land trustee, and not the beneficiary, can accept an offer to purchase the real estate. (Schneider v. Pioneer Trust & Savings Bank, 26 Ill App2d 463, 168 NE2d 808.)

██ And the trustee, not the beneficiary, is the proper party to bring a forcible detainer action. (Lib-

139

erty National Bank v. Kosterlitz, 329 Ill App 244, 67 NE2d 876.)

Experience over many years has shown that a land trust performs many commercially useful purposes. It goes far to obviate the cumbersome nature of real estate transactions when there are multiple owners. In the same circumstance, it can simplify the management and financing of real properties and it is especially useful in the financing and marketing of subdivisions and large scale home or apartment building enterprises. Intolerable delays and sometimes insurmountable legal entanglements may result from the death, incompetency or disappearance of an owner of a fractional interest in land. These, too, can be eliminated by the judicious use of a land trust.[6]

As a result, the Illinois land trust has made for itself over the years an important place in the holding and marketing of titles to real estate, in parcels large and small. It is self-evident that this development could not have taken place had not purchasers and lenders considered themselves safe when investing many millions of dollars on the sole security of land trustees' titles to real estate. In this they were repeatedly assured by courts of review that the trust beneficiaries had no interest in the real estate, and that even so strong a charge as a judgment lien against a trust beneficiary was, therefore, no encumbrance against the real estate title.

While the government has cited a number of Illinois cases [7] as authority for principles contrary to those

---

[6] There have been abuses of the process, but such a problem is not before us, as there is no allegation of fraud or other improper action in the instant case.

[7] Southwest Federal Savings & Loan Ass'n v. Cosmopolitan Nat. Bank, 23 Ill App2d 174, 161 NE2d 697; Bank of Springfield v. Gwinn, 390 Ill 345, 61 NE2d 249; Gordon v. Gordon, 6 Ill2d 572, 129 NE2d 706; Jennings v. Kotz, 299 Ill 465, 132 NE 625.

outlined above, its brief expressly negatives reliance thereon as essential to its position. These cases are all distinguishable from the instant case in that they do not involve land trusts or have other important factual differences.

■ We believe we are correct in stating that there is no substantial difference of opinion between the government and the second mortgagee [8] as to any of the views thus far set down in this opinion. And that situation obtains also with respect to the proposition that long-established state rules of property will not be intruded upon to accommodate federal tax liens in the absence of congressional direction to the contrary. (United States v. Brosnan, 363 US 237; United States v. Hutcherson, 188 Fed2d 326; Tyler v. United States, 281 US 497.)

■ The appellees have urged us to conclude that the points and authorities set forth above constitute adequate basis for affirmance of the chancellor's decree. The government, on the other hand, contends that they are in no way dispositive of this case. The government concedes that Cacciatore's interest under the trust agreement did not amount to an interest in the land, and that his rights to possession and profits were personal property rights. It is the government's position, further, however, that the language of the federal lien law is extremely broad, encompassing, as it does, not only "property" but also "rights to property," whether real or personal; that the taxpayer's personal property right (among others) to demand conveyance of the title to himself, even if not an interest in real estate, is, nevertheless, a sufficient right to which the federal lien might attach, and thereupon become entitled to priority over all subsequent liens against the real estate.

---

[8] The only appellees appearing in this court are those representing the second mortgage interests.

In passing, we might say that the attachment of a lien to an abstract right considered in a void, as it were, would be fruitless. By definition a lien must be found to attach to *property* or rights to *property*. As stated by the government in its brief, "The question presented by this appeal is whether the federal tax liens against all property and rights to property of Frank S. Cacciatore *attached to certain real property* . . . ."

To support its case the government relies primarily upon the decision in United States v. Bess, 357 US 51. There the government brought a suit in equity to impress a federal tax lien upon the proceeds of a life insurance policy owned by the taxpayer. In its opinion the Supreme Court clearly recognized that the rights of the taxpayer-insured were to be measured by the policy contract as determined by state (New Jersey) law. It then held that the insured had neither "property" nor "rights to property" in the proceeds of the policy, since they were not within his reach during his lifetime. And this, even though the insured had the right to name his own estate as the beneficiary under the policy. The court did decide, however, that under New Jersey law the insured had possessed, just prior to his death, a chose in action against the insurance company in the amount of the cash surrender value of the policy, and that this chose in action constituted a property right to which the federal tax lien attached.

We do not consider the Bess case to be either binding or persuasive authority in favor of the government's decision in the instant case. In both cases, to be sure, the taxpayer had rights to property which were subect to federal lien, but those rights were vastly different in nature.

New Jersey law declared that the taxpayer had a property right in the cash surrender value of his insurance policy. So the federal lien was permitted to

attach to that right. Illinois law declares that the right of a land trust beneficiary does not include any interest, legal or equitable, in the real estate, but is limited to the earnings and proceeds of the land after satisfaction of liens against it. So the federal lien in this case is permitted to attach to that right of the trust beneficiary. And, in consequence, the federal lien is entitled to no higher priority than that accorded it in the chancellor's decree of sale.

The government has urged upon us the desirability of tax collections by the United States in this era of hydrogen bombs, rocketry and space capsules, all of which cost huge sums of money. In arriving at the conclusion we have reached in this case, we do not feel, however, that we have unfairly erected against the government any obstacle to the enforcement of its liens should similar situations arise again. In their argument, appellees pointed out that equity or other proceedings would have been available to the government to foreclose its lien before the second and third mortgages came into existence.[9] The government's response was that it should not be put to the trouble and expense of pursuing its lien rights to that extent, and that as a matter of policy it does not do so.[10] We cannot agree with the government in this, when to insure the success of such a policy would, as we have held, require upsetting not only long-established principles of state law but also, perhaps, thousands of real estate titles as well.

A considerable portion of the parties' briefs dealt with the proposition put by the government that the recording of the federal lien against Cacciatore furnished constructive notice of the lien to subsequent

[9] This opinion obviously does not pass on any of the issues which might have been raised in such a suit.

[10] It is interesting to note that the Bess case was a suit in equity brought by the government.

143

mortgagees of the real estate. We believe that the filing of the federal lien did not constitute such constructive notice to persons dealing with the trustee's title, but since, in the light of the views we have expressed, notice would have been of no consequence, we do not feel justified in extending this opinion further to state our reasons for this conclusion.

The same may be said of the remaining question concerning the government's claim to priority over the lien of the first mortgagee for amounts paid on general taxes after the filing of the federal tax lien. Under the provisions of the first mortgage, this payment became additional indebtedness secured by the lien of the mortgage. Since, as we have found, the government's lien did not attach to the real estate at all, there is no real priority problem involved. In any event, Cacciatore's right was subordinate to this mortgage lien, and the government's lien right could be no greater than the interest to which it attached. We, therefore, believe that the decree below was correct in this regard also.

The decree of the Circuit Court of Cook County is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.

144