204 Cal.App.2d 481 (1962)
Estate of PETER TUTULES, Deceased. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Contestant and Appellant,
v.
ALAN CRANSTON, as State Controller, Petitioner and Respondent.
Civ. No. 25742. 
California Court of Appeals. Second Dist., Div. Two. 
June 8, 1962.
 Clarke & Swink, Dickinson Thatcher and Gary L. Leary for Contestant and Appellant.
 Joseph D. Lear, Acting Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, and Myron Siedorf, Assistant Inheritance Tax Attorney, for Petitioner and Respondent.
 ASHBURN, J.
 Bank of America National Trust and Savings Association, as executor of the will of Peter Tutules, deceased, appeals from order overruling objections to report of inheritance tax appraiser and fixing inheritance tax. [1a] The question presented for our determination is whether the court properly upheld an inheritance tax upon decedent's interest as beneficiary of three Illinois land trusts; the corpus being Illinois realty, the trustee a Chicago Trust Company, but decedent being domiciled in the State of California at the time of his death. In one of the trusts he owned 100 per cent of the beneficial interests, in the others 33 1/3 per cent and 50 per cent. Inheritance tax upon these interests was paid to the State of Illinois.
 Appellant argues that as a matter of constitutional law the State of California has no jurisdiction to tax because the beneficial interest in a land trust is real property situated outside the state and hence California's taxing power does not extend to it. The exact terms of the trusts are important in determining the question now before us.
 The pertinent provisions are these: "It Is Understood and Agreed between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or *483 administrator, and not to his or her heirs at law; and that no beneficiary now has, and that no beneficiary hereunder at any time shall have, any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid. ..."
 "It is understood and agreed by the parties hereto and by any person who may hereafter become a party herein that said The Trust Company of Chicago, as Trustee, will deal with said real estate only when authorized to do so in writing and that it will (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by the beneficiaries) on the written direction of Peter Tutules or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with the title to said real estate; provided, however, that the trustee shall not be required to enter into any personal obligation or liability in dealing with said land or to make itself liable for any damages, costs, expenses, fines or penalties, or to deal with the title so long as any money is due to it hereunder. Otherwise, the trustee shall not be required to inquire into the propriety of any such direction."
 "The beneficiary or beneficiaries hereunder shall in his, her or their own right have the management of said property and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall handle the rents thereof and the proceeds of any sales of said property, and said trustee shall not be called upon to do anything in the management or control of said property or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and after the payment to it of all money necessary to carry out said instructions. ... If any property remains in this trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement." (Emphasis added.)
 A discussion of Land Trusts appearing in University of Illinois Law Forum (1955) page 655, says that the land trust is an Illinois institution, and sets forth at page 675 et seq. a standard form which contains language almost identical with that just quoted from the declaration of trust in the present instance. Indeed, the trust instruments here under consideration *484 were executed upon printed forms with the blanks filled in.
 Chief reliance of counsel for appellant is Senior v. Braden, 295 U.S. 422 [55 S.Ct. 800, 79 L.Ed. 1520, 100 A.L.R. 794], opinion by Mr. Justice McReynolds, involving taxability in Ohio of appellant's beneficial interests under seven declarations of trust entitling him to a portion of the rents from parcels of land some of which were situated outside the State of Ohio. Concerning the form of the trust the court said: "In each declaration the Trustee undertakes to hold and manage the property for the use and benefit of all certificate owners; to collect and distribute among them the rents; and in case of sale to make pro-rata distribution of the proceeds. While certificates and declarations vary in some details, they represent beneficial interests which, for present purposes, are not substantially unlike. Each trustee holds only one piece of land and is free from control by the beneficiaries." (P. 430.) Relying upon Brown v. Fletcher, 235 U.S. 589 [35 S.Ct. 154, 59 L.Ed. 374], not a tax case, it was held that the beneficiary owned an interest in the land which was the subject of the trust. Mr. Justice Stone dissented, saying in part, at page 437: "The beneficiaries have none of the incidents of legal ownership. They can neither take nor defend possession of the land. But they are clothed with rights in personam, in form both contractual and equitable, enforcible against the trustee by suit in equity for an accounting, to compel performance of the trust or to restrain breaches of it."
 In the later case of New York ex rel. Cohn v. Graves, 300 U.S. 308 [57 S.Ct. 466, 81 L.Ed. 666, 108 A.L.R. 721], which held that a state may constitutionally tax a resident upon income from rent of land located in another state, Mr. Justice Stone, speaking for the majority (McReynolds, J., and Butler, J., dissenting), said at page 316: "In Senior v. Braden, 295 U.S. 422 [55 S.Ct. 800, 79 L.Ed. 1520, 100 A.L.R. 794], supra, on which appellant relies, no question of the taxation of income was involved. By concession of counsel, on which the Court rested its opinion, if the interest taxed was 'land or an interest in land situate within or without the state,' the tax was invalid, and the Court held that the interest represented by the certificates subjected to the tax was an equitable interest in the land. Here the subject of the tax is the receipt of income by a resident of the taxing state, and is within its taxing power, even though derived from property beyond its reach." (Emphasis added.) *485
 Security Trust Co. v. Department of Revenue (Ky.) 263 S.W.2d 130, deals with the question of situs for ad valorem and death taxes of beneficial interests in an Illinois "Land Trust" similar to the one at bar. It was held: "It is apparent that the holders of the certificates are clothed with none of the legal incidents of ownership. The rights which they hold are in personam, enforceable against the trustee, rather than in rem against the trust property. As pointed out in the dissenting opinion of Justice Stone in Senior v. Braden, supra, the holder of the certificate in every practical aspect stands in the same relationship to the land as the stockholder of a land-owning corporation. We think the certificates constitute intangible personal property and that as such they are liable for local ad valorem and death taxes when owned by a person domiciled in Kentucky." (P. 132.) Concerning Senior v. Braden, supra, upon which appellant principally relied, the court said, in part: "There, the Supreme Court, through Justice McReynolds, with Justices Stone, Brandeis, and Cardozo dissenting, held that certificates in the Chicago Trust, as well as similar certificates representing a beneficial interest in real estate situated in Ohio, were real property and not subject to a local ad valorem tax against intangible personal property held by residents of that state. The majority opinion is not clear as to the specific grounds upon which the court based its conclusion, but a reading of the dissenting opinion by Justice Stone would indicate that: (1) taxation of certificates representing interests in out-of-state real estate was deemed prohibited on theories relating to interstate double taxation; (2) taxation of certificates representing interest in Ohio real estate was considered violative of the uniformity requirements of the Federal Constitution. [2] On both points, the holding in the Braden case has been indirectly overruled, and we are not bound by its authority. ... On the question of double taxation, it was determined in Curry v. McCanless, 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339], and State Tax Commission of Utah v. Aldrich, 316 U.S. 174 [62 S.Ct. 1008, 86 L.Ed. 1359], that there was no Federal constitutional immunity from taxation of intangibles by more than one state." (P. 132.) (Emphasis added.)
 Mr. Justice Stone spoke for the majority of the court in Curry v. McCanless, 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339]. The problem was thus stated: "The questions for decision are whether the States of Alabama and Tennessee may each constitutionally impose death taxes upon the transfer *486 of an interest in intangibles held in trust by an Alabama trustee but passing under the will of a beneficiary decedent domiciled in Tennessee; and which of the two states may tax in the event that it is determined that only one state may constitutionally impose the tax."
 "Decedent, a domiciled resident of Tennessee, by trust indenture transferred certain stocks and bonds upon specified trusts to Title Guarantee Loan & Trust Company, an Alabama corporation doing business in that state. So far as now material, the indenture provided that the net income of the trust property should be paid over to decedent during her lifetime. She reserved the power to remove the trustee and substitute another, which was never done; the power to direct the sale of the trust property and the investment of the proceeds; and the power to dispose of the trust estate by her last will and testament, in which event it was to be 'handled and disposed of as directed' in her will. The indenture provided further that in default of disposition by will the property was to be held in trust for the benefit of her husband, son, and daughter." (P. 360.)
 The opinion contains the following pertinent passages: "The doctrine, of recent origin, that the Fourteenth Amendment precludes the taxation of any interest in the same intangible in more than one state has received support to the limited extent that it was applied in Farmers Loan & T. Co. v. Minnesota, 280 U.S. 204 [50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000]; Baldwin v. Missouri, 281 U.S. 586 [50 S.Ct. 436, 74 L.Ed. 1056, 72 A.L.R. 1303]; First Nat. Bank v. Maine, 284 U.S. 312 [52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401]. Still more recently this Court has declined to give it completely logical application. It has never been pressed to the extreme now urged upon us, and we think that neither reason nor authority requires its acceptance in the circumstances of the present case." (P. 363.) In footnote 1 on page 363 the Senior v. Braden case is cited as illustrative of lack of complete consistency in prior decisions. The court continued: "That rights in tangibles--land and chattels--are to be regarded in many respects as localized at the place where the tangible itself is located for purposes of the jurisdiction of a court to make disposition of putative rights in them, for purposes of conflict of laws, and for purposes of taxation, is a doctrine generally accepted both in the common law and other legal systems before the adoption of the Fourteenth Amendment and since." (P. 363.) "Very different considerations, both theoretical and *487 practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. [Citations.] Obviously, as sources of actual or potential wealth--which is an appropriate measure of any tax imposed on ownership or its exercise--they cannot be dissociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities." (Pp. 365-366.) "But this does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax." (Pp. 366-367.) "If the 'due process' of the Fifth Amendment does not require us to fix a single exclusive place of taxation of intangibles for the benefit of their foreign owner, who is entitled to its protection [citations], the Fourteenth can hardly be thought to make us do so here, for the due process clause of each amendment is directed at the protection of the individual and he is entitled to its immunity as much against the state as against the national government." (Pp. 369-370.) "We can find nothing in the history of the Fourteenth Amendment and no support in reason, principle, or authority for saying that it prohibits either state, in the circumstances of this case, from laying the tax. On the contrary this Court, in sustaining the tax at the place of domicile *488 in a case like the present, has declared that both the decedent's domicile and that of the trustee are free to tax. [Citations.] That has remained the law of this Court until the present moment, and we see no reason for discarding it now." (Pp. 372-373.) See also Graves v. Elliott, 307 U.S. 383 [59 S.Ct. 913, 83 L.Ed. 1356].
 State Tax Com. of Utah v. Aldrich, 316 U.S. 174 [62 S.Ct. 1008, 86 L.Ed. 1359], overruled First Nat. Bank v. Maine, 284 U.S. 312 [52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401], which held that inheritance taxation could be imposed constitutionally by only one state. The court said, in part: "There can be no doubt but that the judgment below should be affirmed if First Nat. Bank v. Maine is to survive, as the judgment in that case prohibited the State of Maine from doing what the State of Utah is here attempting. But we do not think it should survive. And certainly it cannot if the principles which govern the Curry and Graves cases rest on firm constitutional grounds. First Nat. Bank v. Maine, like its forerunners Farmers Loan & T. Co. v. Minnesota, 280 U.S. 204 [50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000], and Baldwin v. Missouri, 281 U.S. 586 [50 S.Ct. 436, 74 L.Ed. 1056, 72 A.L.R. 1303], read into the Fourteenth Amendment a 'rule of immunity from taxation by more than one state.' 284 U.S. p. 326 [52 S.Ct. 174, 76 L.Ed. 318, 77 A.L.R. 1401]. As we said in the Curry Case that doctrine is of recent origin." (P. 176.) "For the reasons stated we do not think that First Nat. Bank v. Maine should survive. We overrule it. In line with our recent decisions in Curry v. McCanless, Graves v. Elliott and Graves v. Schmidlapp we repeat that there is no constitutional rule of immunity from taxation of intangibles by more than one State." (P. 181.)
 Volume 85 Corpus Juris Secundum section 1139, page 890: "The doctrine urged for a time by the supreme court and followed in decisions of other courts that intangible property has a tax situs for estate or inheritance taxes in only one jurisdiction has been overruled and the law as to the tax situs of intangibles restored to what it previously was."
 [3] While it is true that the corpus of the trusts considered in the McCanless case consisted of stocks and bonds, we are convinced that the reasoning of that decision is equally applicable to a real estate trust and that there is no constitutional inhibition upon the imposition by California of a death tax upon the beneficial interests held by Mr. Tutules in the Illinois land trusts. *489
 This relegates us to state law for a definition of the status--as personalty or realty--of the beneficial interests in question. To the effect that this is essentially a state question see Chicago Federal Sav. & Loan Assn. v. Cacciatore, 33 Ill.App.2d 131 [178 N.E.2d 888, 891] and Aquilino v. United States, 363 U.S. 509, 512 [80 S.Ct. 1277, 4 L.Ed.2d 1365]. In the latter case the court said: "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute.' Morgan v. Commissioner, 309 U.S. 78, 82 [60 S.Ct. 424, 84 L.Ed. 585, 589]."
 [4] The Restatement of Conflict of Laws in section 239, comment c, at page 324, says: "Whether the beneficiary of a trust of land has an equitable interest in the land as contrasted with a merely personal claim against the trustee is determined by the law of the state where the land is."
 The law of Illinois is definitely settled to the effect that the interest of a beneficiary in the customary Illinois Land Trust is personal property. Chicago Federal Sav. & Loan Assn. v. Cacciatore, supra, 178 N.E.2d 888 (Dec. 1961), dealt with a land trust, the terms of which (as shown by footnote 3 at p. 891) are scarcely distinguishable from those at bar. The court said: "This agreement contains customary clauses employed and approved for many decades in the creation of an 'Illinois land trust.' " (P. 891.) "Illinois authorities relative to the characteristics of such a trust are abundant and consistent in recognizing the validity of such a device to place in the trustee the full title to the real estate, both legal and equitable. The trust is an active trust not affected by the Statute of Uses, Ill. Rev. Stat. 1961, c. 30, 3. The interest of the beneficiary is a personal property interest only. [Citations.] The intentions of the parties are to be determined from the language of the trust agreement and will be given effect unless contrary to law or public policy. Far from being contrary to public policy, trusts of this type have long been upheld as a means of enabling third parties to deal with real estate in reliance upon the record title of a trustee." (Pp. 892-893.) "As a result, the Illinois land trust has made for itself over *490 the years an important place in the holding and marketing of titles to real estate, in parcels large and small. It is self- evident that this development could not have taken place had not purchasers and lenders considered themselves safe when investing many millions of dollars on the sole security of land trustees' titles to real estate. In this they were repeatedly assured by courts of review that the trust beneficiaries had no interest in the real estate, and that even so strong a charge as a judgment lien against a trust beneficiary was, therefore, no encumbrance against the real estate title." (P. 893.) See also, other Illinois cases to the same effect: Chicago Title & Trust Co. v. Mercantile T. & S. Bank, 300 Ill.App. 329 [20 N.E.2d 992, 995]; Horney v. Hayes, 11 Ill.2d 178 [142 N.E.2d 94, 97]; Duncanson v. Lill, 322 Ill. 528 [153 N.E. 618, 620-621]; Chicago, N.S. & M.R. Co. v. Chicago Title & Trust Co., 328 Ill. 610 [160 N.E. 226, 228-229]; also, Land Trusts, University of Illinois Law Forum (1955), pages 655, 662.
 Gordon v. Gordon, 6 Ill.2d 572 [129 N.E.2d 706, 708], says in part [129 N.E.2d 708]: "In support of its first contention, the bank argues that Gordon's interest in the trust is personal property having a situs at his place of residence, which in this case is California. We cannot agree with this reasoning. The nature of a beneficiary's interest is dependent upon the terms of the trust agreement. In the absence of an express provision to the contrary, the beneficiary is ordinarily the equitable owner of the trust res. If the corpus of the trust is real property, the interest of the beneficiary is also real property. [Citations.] The only exceptions to this rule are where the doctrine of equitable conversion applies, Dicus v. Scherer, 277 Ill. 168 [115 N.E. 161], or where the interest of the beneficiary is of such a limited duration that, even if it were a legal estate, it would not qualify as a freehold. [Citations.]" This case is distinguished in Chicago Federal Sav. & Loan Assn. v. Cacciatore, supra, 178 N.E.2d 888, at page 893, the court saying: "While the government has cited a number of Illinois cases7 as authority for principles contrary to those outlined above, its brief expressly negatives reliance thereon as essential to its position. These cases are all distinguishable from the instant case in that they do not involve land trusts or have other important factual differences." The Gordon decision, supra, is one of those named in footnote 7 as a case not involving a land trust.
 If perchance the question were held to be governed by California law, the result would be the same, namely, taxability *491 for inheritance tax purposes by this state. [5] The decisions in this jurisdiction accept the expressed intent of the parties to be the criterion for differentiating between real and personal interests in trusts of real estate. Houghton v. Pacific Southwest T. & S. Bank, 111 Cal.App. 509, 511 [295 P. 1079], so declares. Wright v. Security-First Nat. Bank, 35 Cal.App.2d 264, 275 [95 P.2d 194], says: "Not only are the rights of third parties not involved here but the parties have clearly expressed the intention that the trustors shall have no right, title or interest in the property conveyed and that their interests under the trust shall be considered as personal property. In Smith v. Bank of America etc. Assn., supra [14 Cal.App.2d 78 (57 P.2d 1363)], it is said that such language is indicative of the intention of the parties and that 'the intention is the criterion.' In Faires v. Title Ins. etc. Co., 15 Cal.App.2d 350 [59 P.2d 428], this court said: 'The declaration of trust contained the provision that the interest of the beneficiaries should be personal and not real property ... It is probably true that this affected [sic] the conversion of an interest in real estate into personal property.' In Bank of America etc. Assn. v. Sparr R. Corp., supra [20 Cal.App.2d 10 (66 P.2d 476)], in holding that the beneficial interests in the trust were personal property the court, after pointing out that the language of the trust agreement and of the assignments of beneficial interests disclosed such an intention, said: 'If the intention of the parties was to treat the beneficial interests as a pledge in the nature of personal property, then and in that event the intention then and there expressed prevails throughout the entire transaction.' "
 Ephraim v. Metropolitan Trust Co., 28 Cal.2d 824 [172 P.2d 501], involved a subdivision trust. The beneficiaries were to pay taxes, assessments, insurance, cost of improvements, etc.; the trustee to execute all deeds and agreements of sale. It was specifically provided that the interest " 'of said Beneficiaries and of each ... successor in interest of said Beneficiaries is personal property and that no such Beneficiary has or shall have any right, title or interest in or to any property covered hereby, nor has or shall have any right or power to in any manner apply for or secure the dissolution or termination of this Trust, or the partition or division of any of the Trust Property. ...' " (P. 828.) (Emphasis added.) The trust was to end after 20 years unless sooner terminated by a sale of all the property and performance of other purposes of the trust; in the absence of any default the unconveyed property *492 was to be deeded to the beneficiaries. At page 835 the court said: "The extent of the interest of the beneficiary of a trust depends upon the manifestation of intention of the trustor, and ordinarily if real property is held in trust, and by the terms of the trust a duty is imposed upon the trustee to sell it and hold the proceeds in trust or distribute the proceeds, the interest of the beneficiary is personal property. ... From the express intention of the parties and the nature and purposes stated in the declaration of trust, it is evident that the Henrys and Metropolitan Trust intended that the grantors should have only a personal property interest in the corpus of the trust." At page 836: "Furthermore, by its terms the trust agreement expressly limited the beneficial interest to personal property. ... It thus appears that by an express trust the Henrys conveyed the real property to the trustee primarily for the purpose of sale, and incidentally for the purpose of security, and the deed and declaration, when construed together, clearly establish that it was the intention of the parties to convert the real property interest of the grantors into personal property."
 Of peculiar interest here is Chambers v. Mumford, 187 Cal. 228 [201 P. 588, 42 A.L.R. 342], wherein it was held that the interest of decedent Mumford, a resident of New York, in a promissory note secured by mortgage on California land was not subject to an inheritance tax in this state. "The note was executed by a resident of California to a resident of California and secured by mortgage on California real estate. The note itself was at all times retained in California in the hands of the payee, who afterward became the agent of the assignee and who collected the money due on the note and retains it in the state of California for the benefit of the appellant." (P. 230.) The court applied the maxim mobilia sequuntur personam, and thus fixed the tax situs in the jurisdiction of Mumford's residence. It was said at page 234: "Such application of this rule has been established by a line of decisions antedating the inheritance tax, and as there is nothing in the enactments creating the inheritance tax to limit or change such application of the rule, it must be held under familiar rules of construction that in the use of the term 'property in this state,' the legislature intended it to have the same meaning as had already been given to practically the same expression in the laws governing property taxes. This rule of construction has been in force so long and has been so consistently followed that if it is to be changed or modified *493 it should be by the legislature and not by the courts." This case has been followed in Westinghouse Elec. & Mfg. Co. v. County of Los Angeles, 188 Cal. 491, 493 [205 P. 1076], and Fishback v. J. C. Forkner Fig Gardens, Inc., 218 Cal. 401, 402 [23 P.2d 293].
 The recent case of Estate of Moore, 190 Cal.App.2d 833, 842 [12 Cal.Rptr. 436], says that "the rule of the common law, sometimes called the maxim mobilia sequuntur personam, has been recognized uniformly throughout California's history."
 The philosophy of the McCanless decision was applied in Estate of Dillingham, 196 Cal. 525, 532 [238 P. 367]: "The theory upon which the inheritance tax is imposed and sustained is that the state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed to that state. ... There is, therefore, in existence no other instrument other than the will passing or purporting to pass the interest of the testatrix to the transferees. There can be no question, it seems to us, therefore, but that the transfer of the property was accomplished by the will, the efficacy of which depended upon the authority of the state of California. In the ultimate analysis a necessary incident to the transfer of the interest depended for its efficacy upon the laws of the state of California, and was for that reason liable for the imposition by the state of a tax upon said transfer. (Bullen v. Wisconsin, 240 U.S. 625 [36 S.Ct. 473, 60 L.Ed. 830], see also Rose's U.S. Notes].)"
 Counsel for both sides discuss the doctrine of equitable conversion and reconversion and its applicability to the facts of this case. We do not enter into that discussion because we are satisfied that what we have said above disposes of the case adequately. Nor do we find the question of whether Mr. Tutules had a freehold estate in the land to be of consequence, for he had no estate whatever in it, merely an equitable right to enforce the trust, which right is personal property under the laws of both Illinois and California.
 Whether these are dry trusts and hence executed by the statute of uses is another question which requires little mention. Under Illinois law the statute does not apply to the customary land trusts such as we have here (Chicago Title & Trust Co. v. Mercantile T. & S. Bank, supra, 20 N.E.2d 992, 995-996; Land Trusts, University of Illinois Law Forum, supra (1955), p. 664). [6] In California the statute of uses is not in effect. (McCurdy v. Otto, 140 Cal. 48, 53 [73 *494 P. 748]; Gray v. Union Trust Co., 171 Cal. 637, 643- 644 [154 P. 306]; Estate of Fair, 132 Cal. 523, 536 [60 P. 442, 64 P. 1000, 84 Am.St.Rep. 70].)
 [1b] Order affirmed.
 Fox, P. J., and Herndon, J., concurred.