(No. 16875.—Cause transferred.)
HERBERT W. DUNCANSON *et al.* Appellants, *vs.* GEORGE
LILL *et al.* Appellees.

*Opinion filed October 28, 1926.*

1. FREEHOLD—*general rule as to when freehold is involved.* A
freehold is involved in a case where the necessary result of the
judgment or decree is that one party gains and the other loses a
freehold, or where the title to the freehold is so put in issue by the
pleadings that the decision of the case necessarily involves a de-
termination of that issue.

2. SAME—*term "freehold" does not include mere right to ac-
quire freehold.* The word "freehold" does not include the mere
right to do that which in equity would entitle the party to a freehold.

3. SAME—*when a freehold is not involved in a suit to enforce
agreement for sale of equity in deed of trust.* Where real property
is conveyed to a trustee, the deed expressly providing that the in-
terest of the beneficiaries shall be regarded as personal property
and consist of the earnings, rentals and proceeds of sales, a suit
to compel assignees of the interests of the beneficiaries to sell the
equity of redemption to a third party in accordance with an agree-
ment of said assignees with one of the beneficiaries does not in-
volve a freehold, as a decree would not require the taking of the
legal title from the trustee, notwithstanding the deed of trust
authorizes the beneficiaries to at any time direct the trustee, in
writing, to make conveyances.

4. APPEALS AND ERRORS—*when the Supreme Court will decline
to take jurisdiction.* Although the question of jurisdiction is not
raised by the parties it is the duty of the Supreme Court to decline
to act in a cause where jurisdiction to determine it is wanting.

APPEAL from the Superior Court of Cook county; the
Hon. DENIS E. SULLIVAN, Judge, presiding.

C. R. LATHAM, H. P. YOUNG, and CHARLES MARTIN,
for appellants.

WILLIAM E. CLOYES, and R. J. KLINGER, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Herbert W. Duncanson, Harriet B. Duncanson and Herschel M. Byall filed their amended bill for specific performance and an accounting in the superior court of Cook county against George Lill and William W. Lill. The defendants answered the bill. The cause was referred to a master in chancery, who by his report recommended the dismissal of the bill for want of equity. Objections and exceptions to the report were overruled and a decree was entered confirming the master's report and dismissing the bill for want of equity at the costs of the complainants. They prosecute this appeal.

By a deed dated February 24, 1917, Arthur B. Moe and Alice I. Moe, his wife, conveyed the real estate described in the bill of complaint to the Chicago Title and Trust Company as trustee, under the provisions of a certain trust agreement. The property conveyed was located at the southwest corner of Broadway and Ainslee street, in the city of Chicago, and was improved by the Veto building, which contained twenty-one apartments and three or four offices. By the deed full power and authority were granted to the trustee, among others, to manage, sell, convey, mortgage or lease the property, and it was provided that no person dealing with the trustee in relation to the property should in any case be obliged to see to the application of any purchase money, rent or money borrowed. It was the intention, expressed in the deed, to vest in the trust company the entire legal and equitable title in fee, and the interest of each and every beneficiary, and of all persons claiming under them, was expressly declared to be personal property and to be in the earnings, avails and proceeds arising from the disposition of the premises.

The trust agreement, to which reference was made in the deed, provided that the trust company would hold title

322—34

to the property for the ultimate use and benefit of Herbert W. Duncanson and Harriet B. Davis, or the survivor of them; that the interest of any beneficiary should consist solely of the right to receive the proceeds from rentals or from sales of the premises, and that such right in the avails of the property should be deemed to be personal property and might be assigned and transferred as such; that in case of the death of any beneficiary, under the agreement, during the existence of the trust, his right and interest should pass to his executor or administrator and not to his heirs-at-law, and that no beneficiary had, or at any time should have, any right, title or interest in or to any portion of the real estate as such but only an interest in the proceeds, it being the intention of the instrument to vest the full legal and equitable title to the premises in the trustee. The agreement further provided that while the trust company was the sole owner of the real estate the beneficiaries should have the management, control and sale of the property, and that the trustee should not be called upon for such management or control except on the written direction of the beneficiaries and after the payment to it of all money necessary to carry out such instructions; that the trustee would, on the written direction of such persons as might be beneficiaries at the time, make deeds of conveyance of or otherwise deal with the title to the property, and that if any property remained in the trust at the expiration of twenty years it should be sold at public sale by the trustee, on reasonable notice, and the proceeds of the sale divided among those entitled thereto under the agreement.

Harriet B. Davis became the wife of Duncanson shortly after the deed in trust and trust agreement were executed. Duncanson was engaged in the construction and operation of apartment buildings in the city of Chicago. Coal was supplied to these buildings by the George Lill Coal Company, a corporation. George and William W. Lill were, respectively, the president and treasurer of the company.

Early in 1918 Duncanson was indebted to the coal company in the sum of $2951.61, payment of which had been demanded. He lacked the money to pay the debt. Accordingly he sought to discharge it by the sale to George and William W. Lill of the interest of himself and wife under the trust agreement. Negotiations to that end were concluded on March 29, 1918. At that time the property was subject to two mortgages, the first for $30,000 and the second for $15,000. Accrued interest on both mortgages and overdue taxes increased the liens on the property. The claim of $2951.61 for coal delivered was satisfied and Duncanson was paid $6112.01, the balance of the purchase price, in money. To consummate the sale Duncanson and his wife executed an assignment dated March 29, 1918, of all their right, title and interest in the property described in the trust agreement to George and William W. Lill, and empowered and directed the trust company to convey the property to them or to such other person as they might direct. The assignees signed the trust agreement and became the beneficiaries under it instead of Duncanson and his wife.

On the day the assignment was executed George and William W. Lill entered into an agreement with Duncanson by which they authorized and empowered him to sell the equity of redemption in the property, and if he sold it within two years they agreed to pay him as his compensation a sum equal to one-half of the net proceeds after deducting from the sale price all sums paid or allowed in the purchase of the property, all payments made in reduction of principal and interest on encumbrances, and all moneys expended for taxes, special assessments, insurance premiums and for operation and maintenance, with interest at six per cent per annum, payable semi-annually, less the income derived from the property, with the proviso that "said Duncanson is to share in the proceeds of said sale in the event that the sum for which it sells, plus the encumbrances thereon, shall exceed $55,000, and then only in the sum for

which it sells in excess of $55,000 after making the deductions" stated. The contract further provided that if George and William W. Lill should receive an offer for the equity of redemption which they would be willing to accept, then Duncanson was to be notified of such offer, and if he did not, within fourteen days from the giving of such' notice, find a purchaser at a sum equal to that offered and on the same or acceptable terms, then George and William W. Lill should have the right to accept the offer which they had received, and in that event Duncanson would not have any right to share in the proceeds of such sale. The agreement concluded with the provision specifying the manner in which notice should be given.

By an agreement dated March 9, 1920, Duncanson agreed to sell the property to Herschel M. Byall for $55,000. The contract required the purchaser to pay the difference between the sum of the liens on the property and the purchase price in cash. Reference was made to the contract of March 29, 1918, between George and William W. Lill and Duncanson, and the period of ninety days was allowed for the consummation of the sale to Byall. On the same day the agreement for this sale was made Duncanson notified George Lill, William W. Lill and William E. Cloyes in writing that he had effected a sale of the property to Byall for $55,000, and such additional sum, if any, as might be necessary to satisfy any indebtedness found to be owing to George and William W. Lill under the contract of March 29, 1918; that the purchaser would assume the encumbrances on the property and pay the balance in cash at the time the deed was delivered, and that he, Duncanson, would meet the persons notified, at their early convenience, for the purpose of determining the amount to which George and William W. Lill were entitled. After the service of the notice Duncanson requested of William E. Cloyes, the attorney for George and William W. Lill, a statement of the income derived from the property and of the expense of

operating it since March 29, 1918. Repeated requests were made for the statement before it was submitted. Duncanson's attorney offered to make a tender of the purchase price, but he was informed that a tender was unnecessary. While Byall apparently purchased the property the actual purchaser was Duncanson. After the expiration of the two-year period fixed by the contract of March 29, 1918, George and William W. Lill refused to consummate the sale to Byall. The Chicago Title and Trust Company, as trustee, had not conveyed the property but continued to hold the title thereto.

Appellants prosecute their appeal directly to this court on the ground that a freehold is involved. A freehold is involved in a case where the necessary result of the judgment or decree is that one party gains and the other loses a freehold, or where the title to the freehold is so put in issue by the pleadings that the decision of the case necessarily involves a determination of that issue. (*Lennartz* v. *Boddie,* 304 Ill. 484; *Bennett* v. *Bennett,* 318 id. 193; *Taylor* v. *Taylor,* 223 id. 423; *Nevitt* v. *Woodburn,* 175 id. 376; *Goodkind* v. *Bartlett,* 136 id. 18; *Sanford* v. *Kane,* 127 id. 591.) By the deed of trust the entire legal and equitable title to the property was expressly vested in the trustee, and the interest of each and every beneficiary, and of all persons claiming under them, was declared to be personal property and to be in the earnings, avails and proceeds arising from the disposition of the property. The trust agreement likewise provided that the interest of any beneficiary should consist solely of the right to receive the proceeds from rentals or from sales of the property; that such right should be deemed to be personal property and might be assigned and transferred as such, and that in case of the death of any beneficiary during the existence of the trust, his right or interest should pass to his executor or administrator and not to his heirs-at-law. The rights of Duncanson and his wife as beneficiaries were declared to be

personal property, and by the assignment George and William W. Lill succeeded to those rights. The assignees merely took the place of the assignors as beneficiaries under the trust agreement and the trust continued to exist. The acquisition of those rights by the assignees effected no change or transfer of the title to the real estate. No conveyance was made by the Chicago Title and Trust Company, as trustee, pursuant to the assignment. The title remained in the trustee and it was not made a party to the suit. Nor does the fact that the beneficiaries might terminate the trust by requiring the trustee to convey the property avail the appellants. The right might or might not be exercised. Such a conveyance would depend upon subsequent acts which might not be required or performed. The word "freehold" does not include the mere right to do that which in equity would entitle the party to a freehold. (*Lennartz* v. *Boddie, supra; Peterson* v. *Peterson,* 264 Ill. 121; *Ryan* v. *Sanford,* 133 id. 291; *Kirchoff* v. *Union Mutual Life Ins. Co.* 128 id. 199.) If the decree sought were entered appellants would not gain and appellees would not lose a freehold, and the title to the real estate is in no way put in issue by the pleadings. Hence a freehold is not here involved and this court is without jurisdiction of this appeal. *Lennartz* v. *Boddie, supra; Bennett* v. *Bennett, supra; Peterson* v. *Peterson, supra.*

The question of jurisdiction has not been raised by the parties. It is our duty, however, to decline to proceed in a cause where the jurisdiction to determine it is wanting. *Bennett* v. *Bennett, supra; Stoddard* v. *Illinois Improvement Co.* 271 Ill. 98; *Burroughs* v. *Kotz,* 226 id. 40; *Brockway* v. *Kizer,* 215 id. 188.

The appeal should have been taken to the Appellate Court for the First District, and the cause will be transferred to that court.